CV 02 00035 #00000007

CC TO JUDGE

FILED LOGGED RECEIVED MAIL

SEP 16 2002

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

C02-35

STATE DISTRICT COURT
DISTRICT OF WASHINGTON
AT SEATTLE

**IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION**

**MDL NO. 1407**

**MOTION FOR DEFAULT JUDGMENT**

**Tammy Taylor v. Bristol-Myers Squibb Company Case No. 01-2122**

Plaintiff Tammy Taylor respectfully brings this motion pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure for a default judgment against Bristol-Myers Squibb Company ("BMS") for failure to plead or otherwise defend in this matter

**FACTUAL BACKGROUND**

Tammy Taylor is a 32-year old woman from International Falls, Minnesota. She is married to Johnny Taylor and has two daughters. On January 6, 1998, Mrs. Taylor, suffering from sinus cold symptoms, took Comtrex Maximum Strength Non-Drowsy Liqui-Gels, a product containing Phenylpropanolamine (PPA), manufactured by BMS. At approximately 5:30 p m., Mrs. Taylor experienced the onset of a terrible headache and went to the emergency room at Falls Medical Center A CT scan of the head revealed a subarachnoid hemorrhage.

After her hemorrhagic stroke, Mrs Taylor was unable to work at her job as a Medical Claims Reviewer. Indeed, she has been unable to work at all since her stroke and receives Social Security Disability payments to this day

Mrs. Taylor filed a lawsuit against BMS in United States District Court, District of Minnesota for injuries caused by use of its PPA-containing medication (See Exhibit A, Complaint of Tammy Taylor) That lawsuit was filed on November 21, 2001 and was properly served on BMS through its registered agent for service of process, a CT

Corporation in Minneapolis, Minnesota on November 30, 2001 (See Exhibit B, Affidavit of Service of Plaintiff's Complaint ) This matter was transferred to the United States District Court for the Western Division of Washington on December 12, 2001 for consolidated pretrial proceedings pursuant to 28 U.S C sec 1407 (See Exhibit C, CTO-7).

Defendant failed to serve an Answer to plaintiff's Complaint on December 20, 2001, notwithstanding the requirements of Fed.R Civ P 12(a)(1)(A) In fact, defendant still has not answered, nine months later, despite plaintiff's repeated requests (See Exhibit D, Affidavit of Jane E Joseph). Despite defendants' failure to answer and out of an abundance of caution, plaintiff served a completed Fact Sheet on defendant's liaison counsel 45 days after this matter was transferred, in accordance with CMO No. 6. (See Exhibit E).

On May 10, 2002, plaintiff's counsel, Jane E Joseph, called national counsel for BMS, Bridget M. Keysa, an attorney with Sedgwick, Detert, Moran & Arnold in Newark, New Jersey, to inquire about BMS' failure to answer Mrs Taylor's Complaint. (See Exhibit D, Affidavit of Jane E. Joseph). Ms Keysa responded that she was not required to answer plaintiff's Complaint and confirmed her position by correspondence dated May 15, 2002 (See Exhibit F, May 15, 2002 correspondence)

By letter of June 5, 2002, Ms. Joseph explained to Mrs. Keysa that her client is in fact required to plead or otherwise defend in accordance with Rule 12 (a)(1)(A). (See Exhibit G, June 5, 2002 correspondence).

By July, 2002 defendant still had not served its Answer Plaintiff's counsel again called Ms. Keysa who indicated she had directed someone at her firm to serve an Answer to plaintiff's Complaint but would not personally serve plaintiff's counsel, despite

plaintiff's counsel's request. Plaintiff's counsel contacted liaison counsel for both plaintiffs and defendants. There is no record of an Answer being served in this matter (See Exhibits D and H)

## ARGUMENT

Federal Rules of Civil Procedure 55(b)(2) permits the court to enter a judgment by default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise…" A defendant cannot be excused from serving an Answer based on counsel's misinterpretation or misunderstanding of the rules governing litigation. See Everyday Learning Corp. v. Larson, 242 F.2d 815 (8th Cir 2001) (A party is responsible for the actions and conduct of his or her counsel and.. under the circumstances.. default may be entered against a party as a result of counsel's actions), Hall v. T.J Cinnamon's, Inc., 121F 3d 434 (8th Cir 1997) (Default judgment upheld for failure to answer Complaint); Ackra Direct Marketing Corp v. Fingerhut Corp., 86F.2d 852, 858 (8th Cir. 1996) (Ruling on Motion for Default based on failure to defend is not governed by specific factors but is generally proper where conduct is willful, contumacious, or intentional)

In Inman v. American Home Furniture Placement, Inc., 120F.3d 117(8th Cir. 1997), defendant did not appear or defend itself for three years Inman moved for default which was entered by the district court clerk Rejecting defendants' representation that their inaction was due solely to the negligence of their attorney, the court stated·

> Litigants choose counsel at their peril. While it may seem harsh to punish defendants for their attorney's behavior, any other result would punish Inman for the inaction of her opponent's lawyer

Id. at 119. (See also Exhibit I, Findings of Fact and Conclusions of Law for Default Judgment in Dion Nodurft and Robert Nordurft v. Heritage Consumer Products LLC,

Case No 01-2-31788-1, signed by the The Honorable Catherine Shaffer on June 18, 2001 Default judgment entered against PPA manufacturer for failure to appear and answer).

Virtually no action has been taken in this matter since it was filed over nine months ago Defendant must not be permitted to use these MDL proceedings as a shield to avoid its most basic obligations Several options were available to this sophisticated defendant if its counsel was unclear about this court's orders Defendant could have contacted its liaison counsel or counsel for any other defendant Had defendant conducted the most superficial investigation, it would have learned of its obligation to serve an Answer This defendant chose to do nothing, despite repeated efforts on the part of plaintiff to resolve this matter short of litigation Defendant has now waived its opportunity to remedy its negligence and should not be heard to argue that its negligence was harmless Default should be entered

**CONCLUSION**

For all the foregoing reasons, plaintiff Tammy Taylor requests that this court grant her Motion for Default Judgment against defendant Bristol-Myers Squibb Company

Dated this 13th day of September, 2002

Respectfully submitted,

LOPEZ, HODES, RESTAINO, MILMAN, & SKIKOS

By ______________________
Jane E Joseph (0074540)
13938A Cedar Rd #373
Cleveland, OH 44118
(216) 921-9314

David L Suggs (0147485)
27995 Boulder Circle
Shorewood, MN 55331
(952) 401-4377
ATTORNEYS FOR THE PLAINTIFF

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

RECEIVED
BY U S. MAIL
2001 NOV 21 PM 2:29
CLERK, U.S. DIST. COURT
MINNEAPOLIS, MN

Tammy Taylor,

Plaintiff,

vs.

Bristol-Myers Squibb Company,

Defendant

COMPLAINT

DEMAND FOR JURY TRIAL

Case No 012122

Plaintiff Tammy Taylor, by and through her attorneys, Lopez, Hodes, Restaino, Milman, Skikos & Polos, for her causes of action against defendant alleges the following:

PRELIMINARY ALLEGATIONS

1. At all material times, plaintiff Tammy Taylor was a citizen of the State of Minnesota.

2. At all material times, defendant Bristol-Myers Squibb Company (hereinafter referred to as "Bristol-Myers") was a Delaware corporation.

3. At all material times, defendant Bristol-Myers was engaged in the manufacture, sale and distribution of the over-the-counter pharmaceutical Comtrex Tablets and Comtrex Liquid-Gels (hereinafter referred to as "Comtrex").

4. Plaintiff Tammy Taylor purchased Comtrex from K-Mart in International Falls, Minnesota. She last used Comtrex on January 6, 1996 at approximately 5:00 p.m. At approximately 5:30 - 6 00 p.m. on January 6, 1996,

plaintiff experienced the onset of an explosive headache. She went to the emergency room at International Falls Memorial Hospital in International Falls, Minnesota and was thereafter admitted to the hospital. Her CT scan showed a subarachnoid hemorrhage. Mrs. Taylor was transferred to the Neuroscience ICU at St. Mary's Hospital in Duluth, Minnesota on January 8, 1996 for additional work-up and treatment. A cerebral angiogram was negative for aneurysm or AVM. Mrs. Taylor remained hospitalized for 7 days. She has been unemployed from her a job as a medical claims reviewer and the recipient of social security disability benefits since the time of her stroke.

DAMAGES

6. As a direct and proximate result of the acts and omissions of the defendant, plaintiff Tammy Taylor has sustained permanent and devastating injuries. These injuries have caused, and will continue in the future to cause, extensive pain and suffering, emotional distress, and have substantially reduced the plaintiff's ability to enjoy life; and to expend substantial sums of money for medical, hospital, and related care, and will be required to do so in the future, all to the plaintiff's general damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

JURISDICTION

7. This Court has jurisdiction pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00, and because there is complete diversity of citizenship between the plaintiff and the defendant.

///

FIRST CAUSE OF ACTION

(Negligence of Bristol-Myers)

8. Plaintiff incorporates by reference paragraphs 1 through 7, inclusive, of this Complaint as though fully set forth herein.

9. At all material times, Bristol-Myers had a duty to exercise reasonable care in all aspects of the testing, labeling, marketing, sale and provision of adequate warnings regarding the use of Comtrex, to ensure the safety of the product and to ensure that the consuming public, including plaintiff and her physicians, obtained accurate information and instructions for the safe use of Comtrex.

10. At all material times, Bristol-Myers knew, or in the exercise of reasonable care should have known, that Comtrex could cause injury to patients, such as the plaintiff, if it was not properly tested, labeled, distributed, marketed, sold and warned about.

11. Each of the following acts and omissions herein alleged were negligently performed or omitted by Bristol-Myers, resulting in a breach of the duties set forth above. These acts and omissions include, but are not restricted to, negligent research of Comtrex, negligent testing of Comtrex, negligent failure to give adequate instructions for the safe use of Comtrex, and negligent failure to give adequate warnings to the plaintiff, her physicians, and the public in general of the potentially dangerous, defective, and unsafe propensities of Comtrex and of the risks associated with its use.

12. As a direct and proximate result of the negligence of Bristol-Myers, plaintiff sustained the damages and injuries set forth above.

///

///

///

## SECOND CAUSE OF ACTION

(Strict Liability of Bristol-Myers)

13. Plaintiff incorporates by reference paragraphs 1 through 12, inclusive, of this Complaint as though fully set forth herein.

14. At all material times, defendant Bristol-Myers manufactured, marketed and sold Comtrex used by the plaintiff in the way it was intended to be used and in a manner which was reasonably foreseeable by defendant.

15. Comtrex was, at the time it left the defendant, a defective product, unreasonably dangerous for use, resulting in injury to the plaintiff as herein alleged.

16. The defective and unreasonably dangerous condition of Comtrex was the proximate cause of the injuries sustained by the plaintiff resulting in the damages and injuries set forth above. Therefore, the plaintiff relies upon the doctrine of strict liability against Bristol-Myers.

## THIRD CAUSE OF ACTION

(Breach of Implied Warranty of Merchantability
by Bristol-Myers)

17. Plaintiff incorporates by reference paragraphs 1 through 16, inclusive, of this Complaint as though fully set forth herein.

18. Bristol-Myers impliedly warranted to prospective purchasers and users, including the plaintiff, that Comtrex was safe, merchantable and fit for the ordinary purposes for which such goods are used.

19. Bristol-Myers' breach of said implied warranties has directly resulted in the plaintiff's damages and injuries set forth above.

///

## FOURTH CAUSE OF ACTION

(Breach of Express Warranty by Bristol-Myers)

20. Plaintiff incorporates by reference paragraphs 1 through 19, inclusive, of this Complaint as though fully set forth herein.

21. The Bristol-Myers Defendats expressly warranted to prospective purchasers and users, including the plaintiff, that Comtrex was safe for use.

22. Bristol-Myers' breach of said express warranty has directly resulted in the plaintiff's damages and injuries set forth above.

## FIFTH CAUSE OF ACTION

(Strict Liability Misrepresentation by Bristol-Myers)

23. Plaintiff incorporates by reference paragraphs 1 through 22, inclusive, of this Complaint as though fully set forth herein.

24. At all material times, Bristol-Myers were engaged in the business of selling over-the-counter pharmaceutical products including Comtrex.

25. Bristol-Myers made misrepresentations of material fact in standardized package inserts and advertising and promotional materials, concerning the safety and use of Comtrex to the public, which included the plaintiff and her physicians.

26. In reasonable reliance upon Bristol-Myers' misrepresentations, plaintiff was induced to, and did, use Comtrex.

27. As a direct and proximate result of Bristol-Myers' misrepresentations, plaintiff sustained the damages and injuries set forth above.

## SIXTH CAUSE OF ACTION

(Negligent Misrepresentation by Bristol-Myers)

28. Plaintiff incorporates by reference paragraphs 1 through 27, inclusive, of this Complaint as though fully set forth herein.

29. Bristol-Myers falsely represented to plaintiff and her physicians that Comtrex was safe when used as instructed. These representations, that Comtrex was safe for its intended use when used as instructed and as labeled were false, as Comtrex was, in fact, dangerous to the health of plaintiff when used as intended.

30. Bristol-Myers failed to exercise reasonable care in ascertaining the accuracy of the information regarding the safe use of Comtrex, and otherwise failed to exercise reasonable care in communicating the information to plaintiff and her physicians.

31. In reasonable reliance upon Bristol-Myers' misrepresentations, plaintiff was induced to, and did, use Comtrex.

32. As a direct and proximate result of Bristol-Myers' misrepresentations, plaintiff sustained the damages and injuries set forth above.

SEVENTH CAUSE OF ACTION
(Violation of the False Statement in Advertising Act

and the Minnesota Prevention of Consumer Fraud Act)

33. Plaintiff incorporates by reference paragraphs 1 through 32, inclusive, of this Complaint as though fully set forth herein.

34. By reason of its conduct as alleged herein, Bristol-Myers violated the provisions of Minn. Stat. §§ 325F.67 and 325F.69 by inducing plaintiff to use Comtrex through the use of false and/or misleading advertising, representations and statements.

35. As a direct and proximate result of Bristol-Myers' statutory violations, plaintiff used Comtrex, and would not have used Comtrex, had

Bristol-Myers not issued false and/or misleading advertising, representations and statements to induce the use of Comtrex.

36. By reason of such violations and pursuant to Minn. Stat. §§ 8.31 subd. 3a, 325F.67, and 325F.68-70, plaintiff is entitled to receive full and complete disclosure of all information known to Bristol-Myers concerning the dangers related to the use of Comtrex; to recover all of the monies paid for the product; to be compensated for the cost of medical care arising out of the use of the product; together with any and all other consequential damages recoverable under the law including, but not limited to, both past and future medical expenses, past and future pain, suffering, disability and emotional distress.

37. In addition, pursuant to Minn. Stat. § 8.31, plaintiff is entitled to recover costs and disbursements, including costs of investigation and reasonable attorneys' fees, and any other equitable relief as determined by this Court.

EIGHTH CAUSE OF ACTION

(Negligence Per Se of Bristol-Myers)

(Violation of Minn Stat. §§ 151.34 and 151 36)

38. Plaintiff incorporates by reference paragraphs 1 through 37, inclusive, of this Complaint as though fully set forth herein.

39. By reason of its conduct as alleged herein, Bristol-Myers violated the provisions of Minn. Stat. §§ 151.34 and 151.36 by manufacturing, selling and delivering a drug that was misbranded into the stream of commerce in the State of Minnesota.

40. As a direct and proximate result of Bristol-Myers' statutory violations, plaintiff, as a member of the class protected by the above-mentioned statutes, sustained the damages and injuries set forth above.

40. As a direct and proximate result of Bristol-Myers' statutory violations, plaintiff, as a member of the class protected by the above-mentioned statutes, sustained the damages and injuries set forth above.

WHEREFORE, plaintiff Tammy Taylor demands judgment against Bristol-Myers as follows:

1 Awarding plaintiff compensatory damages against defendant of an amount in excess of Seventy-Five Thousand Dollars ($75,000);

2. Awarding plaintiff pre-judgment and post-judgment interest on the respective awards;

3. Awarding plaintiff her costs, disbursements, attorney's fees and such other and further relief as the Court may deem just and equitable.

A TRIAL BY JURY IS HEREBY DEMANDED.

Dated: November 20, 2001.

LOPEZ, HODES, RESTAINO,
MILMAN, SKIKOS & POLOS

By: [signature]

David L. Suggs (SB#0147413)
27995 Boulder Circle
Shorewood, MN 55331
(952) 401-4377

450 Newport Center Drive
Second Floor
Newport Beach, CA 92660
(949) 640-8222
ATTORNEYS FOR THE PLAINTIFF

ACKNOWLEDGMENT

The allegations in this Complaint are well grounded in fact and are warranted by existing law or a good faith argument for its extension, modification or reversal. Plaintiff bring this Complaint in food faith and nor for any improper purposes. Plaintiff acknowledges that costs, disbursements and reasonable attorney and witness fees may be awarded to defendant pursuant to Minn. Stat. § 549.21, Subd. 2 and the Rules of Civil Procedure if there is an affirmative finding by the Court to the contrary.

______________________________

RECEIVED
NOV 3 0 2001

Service of Process by

APS International, Ltd.
1-800-328-7171

Tammy Taylor, et. al , Plaintiff(s)
vs.
Bristol-Myers Squibb Company, et. al., Defendant(s)

Law Firm Requesting Service:
LOPEZ, HODES, RESTAINO, ET AL
Ms. Lisa Sles
450 Newport Center Drive
Second Floor
Newport Beach, CA 92660
Customer File:

# AFFIDAVIT OF SERVICE ON A CORPORATION

--Bristol-Myers Squibb Company, c/o CT Corporation Systems, Inc.

Court Case No. __________

State of: Minnesota ) ss.
County of: Hennepin )

**Name of Server:** Joe Carson, undersigned, being duly sworn, deposes and says that at the time of service, s/he was over the age of twenty-one, was not a party to this action,

**Date/Time of Service** that on 30-Nov-2001 02:57 pm

**Place of Service:** at CT Corporation, city of Minneapolis, state of MN

**Documents Served:** the undersigned served the documents described as.
Civil Cover Sheet
Summons and Complaint

**Service of Process on, Person Served, and Method of Service:** A true and correct copy of the aforesaid document(s) was served on:
Bristol-Myers Squibb Company, c/o CT Corporation Systems, Inc.
By delivering them into the hands of an officer or managing agent whose name and title is
Deb VanNess, Regisered Agent

**Description of Person Receiving Documents:** The person receiving documents is described as follows:
Sex F ; Skin Color white ; Hair Color blonde ; Facial Hair N/A
Approx. Age 42 , Approx. Height 5'04" , Approx. Weight 140
✓ To the best of my knowledge and belief, said person was not engaged in the US Military at the time of service.

**Signature of Server:** Undersigned declares under penalty of perjury that the foregoing is true and correct

[signature] 11 30-2001
Signature of Server (Date)

Subscribed and sworn to before me this 30th day of November, 2001

[signature]
Notary Public (Commission Expires)

APS International, Ltd.
APS International Plaza · 7800 Glenroy Rd.
Minneapolis, MN 55439-3122

APS File: 49720-1

CHAIRMAN:
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

MEMBERS:
Judge John F. Keenan
United States District Court
Southern District of New York

Judge Morey L. Sear
United States District Court
Eastern District of Louisiana

Judge Bruce M. Selya
United States Court of Appeals
First Circuit

Judge Julia Smith Gibbons
United States District Court
Western District of Tennessee

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

DIRECT REPLY TO:

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax: [202] 502-2888

http://www.jpml.uscourts.gov

Iturbe

December 12, 2001

TO INVOLVED COUNSEL

Re: MDL-1407 -- In re Phenylpropanolamine (PPA) Products Liability Litigation

(See Attached Schedule CTO-7)

Dear Counsel:

Attached is a copy of a conditional transfer order filed today by the Judicial Panel on Multidistrict Litigation involving the actions listed on the attached schedule. The actions are transferred pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001). Copies of Rule 5.2, dealing with service, and Rules 7.4 and 7.5, regarding "tag-along" actions, are attached.

Inasmuch as there is an unavoidable time lag between notification of the pendency of the tag-along action and the filing of a conditional transfer order, counsel are required by Rule 7.4(b) to notify this office **BY FACSIMILE**, at (202) 502-2888, of any official changes in the status of the tag-along action. These changes could involve dismissal of the action, remand to state court, transfer to another federal court, etc., as indicated by an order filed by the district court. Your cooperation would be appreciated.

**NOTICE OF OPPOSITION DUE ON OR BEFORE: December 27, 2001 (4 p.m. EST)**
(Facsimile transmission is suggested.)

If you are considering opposing this conditional transfer order, please review Rules 7.4 and 7.5 of the Panel Rules before filing your Notice of Opposition. Please file one Notice of Opposition (with an attached schedule of actions, if necessary) if you are opposing the transfer of more than one action. A Consolidated Motion and Brief to Vacate the CTO, with attached schedule of actions, is acceptable and encouraged.

A list of involved counsel is attached.

Very truly,

Michael J. Beck
Clerk of the Panel

By [signature]
Deputy Clerk

Attachments

JPML Form 39A

# SCHEDULE CTO-7 TAG ALONG CASES
# DOCKET NO. 1407
# IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

| ISTRICT DIV CIVIL ACTION# | | | |
|---|---|---|---|
| ALABAMA MIDDLE | | | |
| ALM | 2 | 01-1280 | Waters, et al. v. Bayer Corp. |
| CALIFORNIA CENTRAL | | | |
| CAC | 2 | 01-9867 | Iturbe v. Novartis Corp., et al. |
| CONNECTICUT | | | |
| CT | 3 | 01-2093 | Lewis, et al. v. GlaxoSmithKline, PLC, et al. |
| INDIANA NORTHERN | | | |
| INN | 2 | 01-599 | Baranowski, et al. v. American Home Products Corp. |
| KENTUCKY EASTERN | | | |
| KYE | 5 | 01-437 | Morford, et al. v. American Home Products Corp. |
| KENTUCKY WESTERN | | | |
| KYW | 1 | 01-182 | Anderson, et al. v. American Home Products Corp., et al. |
| KYW | 3 | 01-631 | Horne v. American Home Products, et al. |
| LOUISIANA EASTERN | | | |
| LAE | 2 | 01-3477 | Martin v. Bayer Corp., et al. |
| LAE | 2 | 01-3478 | Favorite, et al. v. Bayer Corp., et al. |
| LAE | 2 | 01-3479 | Mosley, et al. v. Bayer Corp., et al. |
| LAE | 2 | 01-3480 | Sumling, et al. v. Bayer Corp., et al. |
| LAE | 2 | 01-3484 | Garrison, et al. v. Whitehall-Robins Healthcare, et al. |
| LAE | 2 | 01-3487 | Bardales, et al. v. Whitehall-Robins Healthcare, et al. |
| LAE | 2 | 01-3490 | Craft, et al. v. Whitehall-Robins Healthcare, et al. |
| LAE | 2 | 01-3504 | Nichols v. Bayer Corp., et al. |
| LAE | 2 | 01-3505 | Spitale, et al. v. Bayer Corp., et al. |
| LAE | 2 | 01-3522 | Lee, et al. v. Whitehall-Robins Healthcare, et al. |
| LOUISIANA MIDDLE | | | |
| LAM | 3 | 01-1006 | Ambrose, etc. v. Thompson Medical Co. |
| LAM | 3 | 01-1013 | O'Bear v. Novartis Consumer Health, Inc., et al. |
| LAM | 3 | 01-1025 | Beattie, et al. v. Novartis Consumer Health, et al. |
| LOUISIANA WESTERN | | | |
| LAW | 1 | 01-2073 | Finnester v. Whitehall-Robins Healthcare, et al. |
| LAW | 3 | 01-2096 | Weaver v. CCA Industries, Inc. |
| LAW | 3 | 01-2280 | Toombs v. Bayer Corp., et al. |
| LAW | 6 | 01-2438 | Guilbeau, et al. v. Novartis Pharmaceuticals Corp., et al. |
| LAW | 6 | 01-2439 | Bartram, et al. v. Bayer Corp., et al. |
| MINNESOTA | | | |
| MN | 0 | 01-2122 | Taylor v. Bristol-Myers Squibb Co. |
| MISSOURI EASTERN | | | |
| MOE | 4 | 01-353 | Williams v. Novartis Consumer Health, Inc. |
| NEW YORK SOUTHERN | | | |
| NYS | 1 | 01-8840 | Stevens, et al. v. American Home Products Corp., et al. |
| OHIO NORTHERN | | | |
| OHN | 1 | 01-2526 | Kopecky, etc. v. American Home Products Corp. |
| OHN | 3 | 01-7567 | Allison, et al. v. Chattem, Inc. |
| TENNESSEE EASTERN | | | |
| TNE | 1 | 01-329 | Walker v. American Home Products Corp., et al. |
| TNE | 1 | 01-331 | White, et al. v. American Home Products Corp. |
| TENNESSEE MIDDLE | | | |
| TNM | 3 | 01-1488 | Noaman, et al. v. Block Drug Co. |
| TNM | 3 | 01-1489 | Norman, et al. v. Bayer Corp. |
| TEXAS WESTERN | | | |
| TXW | 3 | 01-401 | Deselles v. GlaxoSmithKline, PLC |

# AFFIDAVIT OF JANE E. JOSEPH

**JANE E. JOSEPH** )
) **SS**
**Cuyahoga County, Ohio** )

I, JANE E JOSEPH, declare under penalty of perjury under the laws of the state of Ohio that the following is true and correct to the best of my knowledge

1 I am an attorney with the law firm of Lopez, Hodes, Restaino, Milman & Skikos and lead counsel in the matter of Tammy Taylor v Bristol-Myers Squibb Company My business address is 13938A Cedar Rd , Suite 373, Cleveland, Ohio 44118.

2 A Complaint was filed on behalf of plaintiff Tammy Taylor against Bristol-Myers Squibb Company on November 21, 2001 That Complaint was served on Bristol-Myers Squibb Company through its registered agent for service of process on November 30, 2001 Mrs Taylor's Complaint was transferred to the Western District of Washington pursuant to CTO-7 on December 12, 2001

3 BMS did not answer plaintiff's Complaint on December 20, 2001, the date it was due On May 10, 2002 I contacted defendants' national counsel, Bridget Keysa, an attorney with Sedgwick, Detert, Moran & Arnold in Newark, New Jersey Ms Keysa indicated during our telephone conversation that she had not answered plaintiff's Complaint because CMO No 1 stays all proceedings I explained that CMO No 1 only attaches *after* a case is transferred to the MDL and that her client's Answer had been due before the transfer order became effective I also explained that defendants had served Answers in every other PPA lawsuit I had filed I advised her to check with defendants' liaison counsel Bristol-Myers Squibb Company still did not answer

4 I contacted Ms Keysa again in July, 2002 At that time, she agreed to serve an Answer to plaintiff's Complaint although she would not agree to serve me She indicated that I would have to wait until it "made the rounds" through liaison counsel

5 On September 6, 2002, I called Alesia Holliday, an attorney with the office of Williams, Kastner & Gibbs, liaison counsel for defendants I asked Ms. Holliday whether her office had received an Answer in the Tammy Taylor matter. She responded that her filing system did not permit her to search for a case-specific pleading

6 On September 6, 2002, I contacted Kaj Trapp, Legal Assistant to plaintiff's liaison counsel, Lance Palmer, to ask whether his office had received an Answer

in the Tammy Taylor matter in June or July 2002, as Ms Keysa had represented to me. Mr Trapp checked his database and confirmed that no Answer had been served

**FURTHER SAYETH NAUGHT.**

Jane E. Joseph
Jane E Joseph

Sworn to before me, this 13th day of September 2002

Audrey Schmidt

SCHMIDT
AUDREY AYOTTE, Notary Public
Residence - Summit County
State Wide Jurisdiction, Ohio
My Commission Expires Nov. 29, 2003

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

---------------------------------------- x

IN RE Phenylpropanolamine (PPA) Products Liability Litigation

MDL No. 1407

---------------------------------------- x

**PLAINTIFF'S FACT SHEET**

Please provide the following information for each individual on whose behalf a claim is being made In filling out this form, please use the following definitions (1) "health care provider" means any hospital, clinic, center, physician's office, infirmary, medical or diagnostic laboratory, or other facility that provides medical, dietary, psychiatric, mental, emotional or psychological care or advice, and any pharmacy, weight loss center, counselor, dentist, x-ray department, laboratory, physical therapist or physical therapy department, rehabilitation specialist, physician, psychiatrist, osteopath, homeopath, chiropractor, psychologist, therapist, nurse, herbalist, nutritionist, dietician, or other persons or entities involved in the evaluation, diagnosis, care and/or treatment of you, (2) "document" means any writing or record of every type that is in your possession or the possession of your counsel, including but not limited to written documents, e-mails, cassettes, videotapes, photographs, charts, computer discs or tapes, and x-rays, drawings, graphs, phono-records, nonidentical copies and other data compilations from which information can be obtained and translated, if necessary, by the respondent through electronic devices into reasonably usable form You may attach as many sheets of paper as necessary to fully answer these questions If you have any documents (as defined above), including, but not limited to, packaging, instructions, PPA-containing product or other materials or items that you are requested to produce as part of answering this fact sheet or that relate to PPA, any PPA-containing product or medication you allegedly took, or the incident, injuries, claims or damages that are the subject of your complaint, you must NOT dispose of, alter or modify these documents or materials in any way You are also required to give all of these documents and materials to your attorney as soon as possible. If you are unclear about these obligations please contact your attorney

## I. CASE INFORMATION

A Please state the following for the civil action which you filed

1 Case Caption Tammy Taylor v Bristol-Myers Squibb Company

2 Civil Action No. in Western District of Washington. MN 0 01-2122

3 Transferor Court and Civil Action No in that court United States District Court For The District of Minnesota, Case No. 01-2122 ADM/AJB

4 Please state name, address, telephone number, fax number and e-mail address of principal attorney representing you.

Jane E Joseph, Esq
Attorney Name

Lopez, Hodes, Restaino, Milman & Skikos
Firm

450 Newport Center Drive, Second Floor
Street Address

Newport Beach, California 92660
City, State and Zip Code

(949) 640-8222 — Telephone number
(949) 640-8294 — Fax Number

jejoseph@ix netcom com
e-mail address

B If you are completing this questionnaire in a representative capacity (e g , on behalf of the estate of a deceased person or a minor), please complete the following

1 Not applicable
Your Name

2 ______________________
Street Address

3 ______________________
City, State and Zip Code

4 In what capacity are you representing the individual

______________________

5 If you were appointed by a court, state the

______________________ Court
______________________ Date of Appointment

6 Your relationship to deceased or represented person

______________________________

7 If you represent a decedent's estate, state the date of death of the decedent

______________________________

[If you are completing this questionnaire in a representative capacity, please respond to the remaining questions with respect to the person who used PPA-containing medications or products Those questions using the term "You" refer to the person who used the PPA-containing medications or products. If the individual is deceased, please respond as of the time immediately prior to his or her death unless a different time period is specified ]

C Claim Information

Do you claim that any physical, psychiatric, psychological or emotional injuries, illnesses and/or conditions have resulted from your use of PPA-containing medications and/or products?

Yes__x__ No_____

If the answer to the foregoing question is yes, state the nature of the injuries, illnesses or conditions

Subarachnoid hemorrhage with permanent injuries

______________________________

______________________________

D Identify by complete brand name and/or trade name the PPA-containing medications and/or products you claim caused your injuries, including the specific type or version of the medication or product, and the date on which you ingested each such product or medication

Comtrex Maximum Strength Non-Drowsy Liqui-Gel on January 6, 1998

______________________________

______________________________

II PERSONAL INFORMATION

A. Last Name: Taylor

First Name Tammy

Middle Name or Initial A

B Maiden or other names used or by which you have been known, and the dates during which you were known by such names

Salyers from birth until 7/27/96

C Present Street Address: 1520 Main Ave.

International Falls, MN 56649

D. Current or last employer

Uniprise
Name

1902 Valley Pine Circle, International Falls, MN 56649
Street Address, City, State and Zip Code

1995 – January 6, 1998
Dates of Employment

Claims Reviewer
Occupation

E. Social Security Number 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

F Driver's License Number T460-785-067106

G. Date and Place of Birth 2-9-70, Detroit, Michigan

H Sex Male_____ Female__x__

I Racial and Ethnic Background: Caucasian

J Have you ever served in any branch of the military?

Yes_____ No_x____

1 Branch and dates of service

_______________

2 Were you discharged for any reason relating to your medical, physical, psychiatric or emotional condition?

Yes_____ No_____

If yes, state what that condition was.

______________________________________________________

3 Have you ever served overseas?

Yes_____ No_____

If yes, state location and dates

______________________________________________________

K. Have you ever been rejected from military service for any reason relating to your health or physical condition?

Yes_____ No__x__

L. Have you ever filed a worker's compensation claim?

Yes_____ No__x__

If yes, please state

1. Year claim was filed ______________________________

2 Where claim was filed ______________________________

3. Claim/docket number, if applicable______________________________

4 Nature of disability ______________________________

5 Period of disability ______________________________

[Attach additional sheets as necessary to describe more than one claim ]

M Have you ever filed a social security disability claim?

Yes_x____ No_____

If yes, please state

1 Year claim was filed ____1998__________________________

2 Where claim was filed. MN Department of Economic Security __________

3 Nature of disability Neuropsychological Problems ______________

4 Period of disability: 1/6/98 - present ____________________

[Attach additional sheets as necessary to describe more than one claim.]

N Have you ever filed any other form of disability claim?

Yes_____ No_x____

If yes, please state·

1 Year claim was filed ______________________________

2 Where claim was filed.______________________________

3. Name of insurer/employer or other party to whom claim was made·______________________________

4 Nature of disability·______________________________

5. Period of disability.______________________________

O Have you ever been denied life insurance for reasons relating to your medical, physical, psychiatric or emotional condition?

Yes_____ No__x__

If yes, please state when, the name of the company and the company's stated reason for denial

______________________________

______________________________

P Have you ever filed a lawsuit or made a claim, other than in the present suit, seeking damages?

Yes_____ No___x__

If yes, state the court in which such claim was filed, the caption, case name and/or names of adverse parties, and the civil action or docket number assigned to each such claim, action or suit, and a brief description of the claims asserted

______________________________

______________________________

Q Have you been convicted of a felony within the last 10 years?

Yes_____ No___x__

R Identify each address at which you have resided during the last ten (10) years, including time periods of residence

1992 360 Wilson St , Vidor, TX 77662

| | |
|---|---|
| 1993 – 95 | 1106 – 8th St., International Falls, MN |
| 1995 – 96 | 624 – 8th St., International Falls, MN |
| 1996 – present | 1520 Main Ave., International Falls, MN |

S. Has any insurance or other company provided medical coverage to you (either directly or through a group including any employer of yours) or paid medical bills on your behalf at any time, beginning ten (10) years before your alleged PPA injury through the present?

Yes __x__No_____

If "yes," then as to each such Company, separately state.
(i) Name of company,
(ii) Address of company;
(iii) The account/policy number or designation,
(iv) Dates of coverage, and
(v) When claim was made.

| | |
|---|---|
| 1988 – 1995 | **MN Medical** |
| | **444 Lafayette Rd.** |
| | **St. Paul, MN 55155-3855** |
| | **Plan #2302** |
| | **Cert. # 376788660** |
| 1995 – July 1998 | Medica Choice |
| | Address unknown |
| | ID No · 45070374788660 00 |
| 7/98 – Jan 2002 | Uninsured |
| Jan. 2002 – present | MN Health Care Program |
| | 444 Lafayette Rd. |
| | St Paul, MN 55155-3855 |
| | ID No 00848988 |

T Have you ever been out of work for more than thirty (30) days for reasons related to your health?

Yes__x__ No_____

If yes, please state the dates, employer and health condition

See 'M' above

---

---

---

III EDUCATIONAL HISTORY

Identify each school, college, university or other educational institution you have attended, the dates of attendance, courses of study pursued and diplomas or degrees awarded

First grade: Forestland School

Second – Sixth Grades: Alexander Baker School

Seventh – Eighth Grades Backus Middle School

Ninth – Twelfth Grades Falls Senior High (Graduation 1988)

Rainy River Community College. Two-year course with Secretarial and Account Clerk

Certificate (1989 and 1995)

IV FAMILY INFORMATION

A Have you ever been married?

Yes__x__ No_____

B. If yes, for each spouse/former spouse state

1. Spouse's name: Johnny Taylor
2. Dates of marriage 7-27-96
3. Spouse's date of birth: 7-3-71
4 Spouse's occupation. Maintenance
5. Spouse's address: 1520 Main Ave., International Falls, MN 56649
6. Nature of termination of marriage N/A
7. Date of dissolution of marriage: N/A

C. Has your spouse filed a loss of consortium claim?

Yes_____ No_x____

D Please provide the following information for your grandparents, parents, siblings and children

| Name | Relationship | Date of Birth | Date Of Death (if applicable) | Occupation |
|---|---|---|---|---|
| Mabel Salyers | Grandmother | 9/24/28 | 11/10/920 | Housewife |
| Tom Salyers | Grandfather | 2/29/20 | 3/15/93 | Unknown |
| Alice Dilly | Grandmother | 12/28/22 | 11/1/96 | Dishwasher |
| Fred Dilly | Grandfather | 9/21/19 | 7/74 | Unknown |
| Tommy Salyers, Jr. | Father | 6/4/47 | N/A | Unemployed |
| | | | N/A | Nursing Assistant |
| | | 6/6/50 | | |
| Brenda Bauer | Mother | | | |
| | | | | Unemployed |
| | | | N/A | |
| Tommy Salyers, III | | 2/28/73 | | Student |
| | | | N/A | |
| | Brother | 2/7/93 | | |
| Breanna Salyers | Daughter | | | Student |
| | | | N/A | |
| Aubree Salyers | | 5/16/94 | | |

| Name | Relationship | Date of Birth | Date Of Death (if applicable) | Occupation |
|---|---|---|---|---|
| | Daughter | | | |

## V. CURRENT MEDICAL CONDITION

A. Do you currently suffer from any physical injuries, illnesses or disabilities?

Yes__x__ No_____

1. Identify the injury, illness, or disability, symptoms and date(s) of onset.

Post-stroke complications
Injury, illness or disability

Many symptoms including but not limited to memory loss, comprehension problems, balance problems, headaches, fatigue
Symptoms

January 6, 1998
Date(s) of onset

January 7, 1998
Date(s) of diagnoses

2 By whom first diagnosed

Falls Memorial Hospital — Physician's Name
Neurology — Specialty

1400 Hwy 71, International Falls, MN 56649
Address (if not otherwise provided)

VI. MEDICAL BACKGROUND

A. Height: 5'5"

B. Current Weight. 200 lbs

C. Lowest and highest weight since age 18: 140lbs/290lbs

D To the best of your knowledge, have you used any of the following medications or substances from 10 years prior to the date of your injury through the present?

| | | Date First Taken | Date Last Taken |
|---|---|---|---|
| 1 | Oral contraceptives<br>Yes___ No_x_ | | |
| 2 | Monamine Oxidase ("MAO") inhibitors<br>Yes___ No__x | | |
| 3. | Anticoagulants<br>Yes___ No_x_ | | |
| 4 | Antidepressants<br>Yes x__ No___ | Approximately April 2001 | |
| 5. | Heart medications<br>Yes___ No_x_ | | |
| 6. | Blood pressure medication<br>Yes___ No__x_ | | |
| 7 | Thyroid medications<br>Yes___ No_x__ | | |
| 8 | Diuretics/water pills<br>Yes___ No__x_ | | |
| 9. | Hormones<br>Yes___ No_x__ | | |

| | | Date First Taken | Date Last Taken |
|---|---|---|---|
| 10. | Psychiatric medications<br>Yes___ No__x__ | | |
| 11. | Asthma/breathing medications<br>Yes___ No x___ | | |
| 12. | Nasal sprays<br>Yes___ No_x__ | | |
| 13. | Attention deficit medications<br>Yes___ No_x___ | | |
| 14 | Cocaine/crack cocaine<br>Yes___ No__x__ | | |
| 15. | Heroin or methadone<br>Yes___ No_x__ | | |
| 16. | Marijuana or hashish<br>Yes___ No__x__ | | |
| 17. | LSD, Ecstasy, ICE, PCP, MDMA<br>Yes___ No_x__ | | |
| 18. | Amphetamines<br>Yes___ No__x__ | | |
| 19. | Inhaled nonprescription substances (e.g., inhalation of glue or toluene)<br>Yes___ No__x__ | | |
| 20 | Methysergide (Sansert)<br>Yes___ No x___ | | |
| 21 | Ergotamine preparations (e.g Cafergot)<br>Yes___ No_x__ | | |

| | | Date First Taken | Date Last Taken |
|---|---|---|---|
| 22. | L-tryptophan<br>Yes___ No__x_ | | |
| 23. | Any medication for migraine headaches<br>Yes_x_ No___ | 1998 | 1999 |
| 24. | Caffeine-containing stimulants (e.g. No-Doz, Vivarin)<br>Yes___ No__x_ | | |
| 25. | Over-the-Counter appetite suppressants<br>Yes___ No___x | | |
| 26 | Prescription diet medications<br>Yes___ No_x__ | | |
| 27. | Any other prescription medicines regularly taken in the last 10 years<br>Yes___ No_x_ | | |
| 28. | Dietary Supplements, vitamins<br>Yes_x_ No___ | Childhood – present | |
| 29. | Herbal Products<br>Yes_x_ No___ | 1994 – present | |
| 30 | Steroids<br>Yes___ No_x_ | | |

E. Smoking history (check wherever appropriate)

1 Have you ever smoked cigarettes? Yes x___ No___

If no, skip to E 4

2 Do you currently smoke cigarettes? Yes___ No x___

If yes, state amount smoked. _____ packs per day for ______ years

If no, state date on which smoking ceased **September 2001** and state amount smoked· ½ - 1 ______ packs per day for 10_______ years

3. At the time that you sustained the injuries alleged in the Complaint, were you a smoker of cigarettes? Yes___ No_x_

If yes, state amount smoked. packs per day for _______ years

4 Have you ever smoked cigars or pipe tobacco? Yes___ No_x_

If no, skip to F.

5 Do you currently smoke cigars or pipe tobacco? Yes___ No_x_

If yes, state amount smoked ___ cigars/pipes per day for ____ years

If no, state date on which smoking ceased _______________ and state amount smoked ______ cigars/pipes per day for _______ years

6 At the time that you sustained the injuries alleged in the Complaint, were you a smoker of cigars or pipe tobacco? Yes___ No_x_

If yes, state amount smoked. _______ packs per day for _________ years

F. Drinking History

1 Do you currently drink alcohol (beer, wine, whiskey, etc )?

Yes_____ No_____x

If yes, check which represents your current alcohol consumption

_____ 1-5 drinks per week
______6-10 drinks per week
_____ 11-14 drinks per week
_____ 15 or more drinks per week
_____ Other (Describe -____________________________)

2 Have you ever drunk alcohol (beer, wine, whiskey, etc )?

Yes_x___ No_____

*If yes, please check which represents your greatest alcohol consumption over an extended (six (6) months or greater) period within the last 10 Years?*

_____ 1-5 drinks per week
_____ 6-10 drinks per week
_____ 11-14 drinks per week
_____ 15 or more drinks per week
_x___Other (Describe- Never more than app. 3 drinks/year)

When was this period? __/__/__ – __/__/__

3 Check which represents your weekly alcohol consumption for the month prior to the time that you sustained the injuries alleged in the Complaint?

X___ 0 drinks per week
_____ 1-5 drinks per week
_____ 6-10 drinks per week
_____ 11-14 drinks per week
_____ 15 or more drinks per week
_____ Other (Describe-_______________________________)

G Caffeine history

1. Do you currently drink caffeinated beverages (coffee, tea, sodas, etc )?

Yes__x___ No_____

If yes, check which represents your current caffeine consumption

x____ 1-3 drinks per day
_____ 3-5 drinks per day
_____ 6 or more drinks per day

2 Have you ever drunk caffeinated beverages (coffee, tea, sodas, etc.)?

Yes x_____ No_____

If yes, check which represents your greatest caffeine consumption over an extended period

x____ 1-3 drinks per day
_____ 3-5 drinks per day
_____ 6 or more drinks per day

When was this period? 1990s

3 Check which represents your daily caffeine consumption for the month prior to the time that you sustained the injuries alleged in the Complaint?

_____ 0 drinks per day
x____ 1-3 drinks per day
_____ 3-5 drinks per day
_____ 6 or more drinks per day

H. Have you ever experienced or been diagnosed or treated for any of the following

1. Hypertension or high blood pressure Yes___ No x___
2 Aneurysm Yes___ No__x__
3 Obesity Yes___ No___x__

| | | |
|---|---|---|
| 4 | Eating disorders (e g anorexia, bulimia) | Yes___ No___x |
| 5. | Arteriovenous malformation ("AVM") | Yes___ No___x |
| 6. | Abnormality of blood vessels or circulatory system | Yes___ No___x |
| 7. | Blood clots or thrombosis | Yes___ No___x |
| 8 | Blood disorders or dyscrasias (abnormal blood cells) | Yes___ No___x |
| 9 | Autoimmune disease or condition | Yes___ No___x |
| 10. | Rheumatological condition | Yes___ No___x |
| 11 | Coagulopathy | Yes___ No___x |
| 12. | Any clotting disorder | Yes___ No___x |
| 13. | Hepatic (liver) disease or dysfunction | Yes___ No___x |
| 14 | Kidney disease | Yes___ No___x |
| 15 | Prostate enlargement | Yes___ No___x |
| 16 | Stroke of any type (e g., hemorrhagic stroke, ischemic stroke, intracranial hemorrhage, intracerebral hemorrhage, subarachnoid hemorrhage) | Yes x___ No___ |
| 17. | Transient ischemic attack | Yes___ No___x |
| 18 | Cardiovascular disease or condition | Yes___ No___x |
| 19 | Heart or heart valve disease | Yes___ No___x |
| 20 | Heart attack | Yes___ No___x |
| 21 | Brain tumors | Yes___ No___x |
| 22 | Seizure disorder or epilepsy | Yes___ No___x |
| 23. | Lupus | Yes___ No___x |
| 24. | Diabetes | Yes___ No___x |
| 25. | Atherosclerosis | Yes___ No___x |
| 26 | Vasculitis | Yes___ No___x |
| 27 | Neurological disease or condition | Yes___ No___x |
| 28 | High cholesterol | Yes___ No___x |
| 29 | High triglycerides | Yes___ No___x |
| 30 | Irregular heart beat, arrythmia, heart palpitations, tachycardia and bradycardia | Yes___ No___x |
| 31 | Angina, chest pain | Yes___ No___x |
| 32 | Bleeding disorder | Yes___ No___x |
| 33. | Fainting, dizziness or lightheadedness | Yes___ No___ |
| 34 | Head pounding | Yes___ No___x |
| 35 | Migraine headaches | Yes___x No___ |
| 36 | Memory Loss | Yes___x No___ |
| 37. | Arthritis or joint pain | Yes___ No___x |
| 38. | Shortness of breath | Yes___ No___x |
| 39 | Alcoholism | Yes___ No___x |

I. If you responded yes to any of the above, please identify the condition, the date of onset and state the name of the physician or other person (and, if not provided in the accompanying list, the address of the physician or the other person) who made the diagnosis or informed you of the condition

1. Condition: **LISA: DELETE THIS ONE!!! AND PUT "no" NEXT TO #33 Above!!!**________________________________

Onset. **DELETE!** ________________

Name and address of diagnosing physician or other person.
**DELETE!** ________________

Generic name, brand name, strength and daily dose of any medication prescribed: **DELETE!!!** ________________

2 Condition Migraine Headaches

Onset 1994 or 1995

Name and address of diagnosing physician or other person.
Duluth Clinic, International Falls, MN

Generic name, brand name, strength and daily dose of any medication prescribed Excedrine Migraine, Tylenol with Codeine, Tylenol

3 Condition Memory Loss

Onset After January 6, 1998

Name and address of diagnosing physician or other person
St Mary's Hospital, 2427 W 4th Street, Duluth, MN 55806

Generic name, brand name, strength and daily dose of any medication prescribed N/A

4. Condition ________________

Onset ________________

Name and address of diagnosing physician or other person.

________________

Generic name, brand name, strength and daily dose of any medication prescribed: ________________

J To the best of your knowledge, have your parents, siblings or grandparents or children experienced, been diagnosed with or treated for any of the following:

| | |
|---|---|
| 1. Hypertension or high blood pressure | Yes_x_ No___ Unknown___ |
| 2 Aneurysm | Yes___ No_x_ Unknown___ |
| 3. Obesity | Yes___ No__x Unknown___ |
| 4. Eating disorders (e.g., anorexia, bulimia) | Yes___ No_x_ Unknown___ |
| 5. Arteriovenous malformation ("AVM") | Yes___ No_x_ Unknown___ |
| 6. Abnormality of blood vessels or circulatory system | Yes___ No_x_ Unknown___ |
| 7. Blood clots or thrombosis | Yes___ No_x_ Unknown___ |
| 8. Blood disorders or dyscrasias (abnormal blood cells) | Yes___ No_x_ Unknown___ |
| 9. Autoimmune disease or condition | Yes___ No__x Unknown___ |
| 10. Rheumatological condition | Yes___ No x___ Unknown___ |
| 11. Coagulopathy | Yes___ No_x_ Unknown___ |
| 12. Any clotting disorder | Yes___ No_x_ Unknown___ |
| 13. Hepatic (liver) disease or dysfunction | Yes___ No_x_ Unknown___ |
| 14. Kidney disease | Yes___ No_x_ Unknown___ |
| 15. Prostate enlargement | Yes___ No_x_ Unknown___ |
| 16. Stroke of any type (e.g., hemorrhagic stroke, ischemic stroke, intracranial hemorrhage, intracerebral hemorrhage, subarachnoid hemorrhage) | Yes_x_ No___ Unknown___ |
| 17. Transient ischemic attack | Yes___ No_x_ Unknown___ |
| 18. Cardiovascular disease or condition | Yes___ No_x_ Unknown___ |
| 19. Heart or heart valve disease | Yes___ No_x_ Unknown___ |
| 20. Heart attack | Yes_x_ No___ Unknown___ |
| 21 Brain tumors | Yes___ No x___ Unknown___ |
| 22 Seizure disorder or epilepsy | Yes___ No_x_ Unknown___ |
| 23 Lupus | Yes___ No_x_ Unknown___ |
| 24 Diabetes | Yes_x_ No___ Unknown___ |
| 25 Atherosclerosis | Yes___ No__x Unknown___ |
| 26 Vasculitis | Yes___ No__x Unknown___ |
| 27. Neurological disease or condition | Yes___ No_x_ Unknown___ |
| 28. High cholesterol | Yes___ No_x_ Unknown___ |
| 29 High triglycerides | Yes___ No_x_ Unknown___ |
| 30. Irregular heart beat, arrythmia, for heart, palpitations, tachycardia and bradycardia | Yes___ No_x_ Unknown___ |
| 31. Angina, chest pain | Yes___ No_x_ Unknown___ |
| 32 Bleeding disorder | Yes___ No_x_ Unknown___ |
| 33 Fainting, dizziness or lightheadedness | Yes___ No_x_ Unknown___ |
| 34. Head pounding | Yes___ No_x_ Unknown___ |
| 35. Migraine headaches | Yes___ No_x_ Unknown___ |
| 36 Memory Loss | Yes___ No_x_ Unknown___ |
| 37. Arthritis or joint pain | Yes___ No_x_ Unknown___ |
| 38 Shortness of Breath | Yes___ No_x_ Unknown___ |
| 39. Injury to any part of the body | Yes___ No_x_ Unknown___ |
| 40. Alcoholism | Yes___ No_x_ Unknown___ |

K. If you answered yes to any of the preceding, please identify the person who experienced, was diagnosed with or was treated for that condition.

1 Person Brenda Bauer

Relationship· Mother

Condition: Hypertension

Date of onset. App. 1982

Name of any medication prescribed· unknown

2 Person. Tommy Salyers, Jr

Relationship Father

Condition Hypertension/ Heart Attack/ Diabetes

Date of onset: 2001/ 2001/ 2001

Name of any medication prescribed Unknown/ Unknown/ Unknown

3. Person Alice Dilly

Relationship: Grandmother

Condition. Stroke

Date of onset: 1980

Name of any medication prescribed: unknown

4 Person· Mabel Salyers

Relationship: Grandmother

Condition Diabetes

Date of onset 1987

Name of any medication prescribed Unknown

5. Person: Tom Salyers III
Relationship Brother
Condition: Diabetes
Date of Onset. Unknown
Name of any medication prescribed Unknown

L. If you claim psychological, cognitive or emotional injury as a consequence of using any PPA-containing medications, state whether you have experienced or been treated for any psychological, psychiatric (including depression) or emotional problem prior to the use of the PPA-containing medications at issue

Yes_x__ No___

If yes, please state

1 Name and address of each person who treated you

a Salvation Army, Capt Tim or Lorraine Farquharson
Name

1301 3rd Ave. West, International Falls, MN 56649
Street Address (if not otherwise provided)

b Northland Mental Health Center
Name

1404 Hwy 71, International Falls, MN 56649
Street Address (if not otherwise provided)

c. ____________________
Name

____________________
Street Address (if not otherwise provided)

2 Condition for which treated

Depression, post-stroke

3 When treated

1998 - present

M. Please indicate whether you have received any of the following procedures or surgeries

1 Heart, lung or other chest surgery Yes___ No_x_

For what condition?__________________________________

When?________________________________________

Treating physician:

____________________________________________

2. Treatment for heart attack or angina Yes___ No x__

For what condition?__________________________________

When?________________________________________

Treating physician

____________________________________________

3. Pacemaker Yes___ No x__

For what condition?__________________________________

When?________________________________________

Treating physician

____________________________________________

4 By-pass surgery Yes___ No x__

For what condition?__________________________________

When?________________________________________

Treating physician·

____________________________________________

5. Cranial (brain) surgery Yes___ No x__

For what condition?__________________________________

When?________________________________________

Treating physician

____________________________________________

6 Vascular surgery Yes___ No x__

For what condition?__________________________________

When?________________________________________

Treating physician·

____________________________________________

7. Any other surgery Yes_x__ No___

For what condition? Appendectomy, age 9, Falls Memorial Hospital, Cesarean Section, 1994, Falls Memorial Hospital_______________

When?________________________________________

Treating physician:

____________________________________________

N. Have you ever received any traumatic injury to your head, neck or chest? Yes x__ No___

If yes, please state when and describe the injury

| | |
|---|---|
| **March 31, 1985** | **Fell in gym at school; hit head** |
| **December 20, 1985** | **Fell on ice; hit forehead** |
| **December 23, 1990** | **Fell on ice; hit forehead** |
| When | Injury |

Name of doctor or hospital providing treatment **All treatment at Falls Memorial Hospital**

____________________________________________

Medications taken·_ **See medical records**____________________

O. To the best of your knowledge, state whether any of the following tests were administered BEFORE your use of the PPA-containing medications at issue in this lawsuit

| | | | |
|---|---|---|---|
| 1 | Echocardiogram | Yes___ | No x__ |
| 2. | Electrocardiogram | Yes___ | No_x__ |
| 3. | Electroencephalogram | Yes___ | No_x__ |
| 4 | Arterial or cranial angiogram | Yes___ | No__x_ |
| 5 | MRI, cat-scan or x-ray of the head, neck or brain | Yes___ | No__x_ |
| 6 | MRA (magnetic resonance angiography) | Yes___ | No_x__ |
| 7. | Other diagnostic test or imaging of the brain | Yes___ | No__x_ |

P For each test for which you answered yes, please identify the treating physician and approximate date of the test

| | | |
|---|---|---|
| ____________ | ____________ | ____________ |
| Test | Treating Physician | Approximate date |
| ____________ | ____________ | ____________ |
| Test | Treating Physician | Approximate date |
| ____________ | ____________ | ____________ |
| Test | Treating Physician | Approximate date |

Q. To the best of your knowledge, state which of the following tests was administered AFTER your use of the PPA-containing medications at issue in this lawsuit

| | | |
|---|---|---|
| 1 | Echocardiogram | Yes___ No_x_ |
| 2 | Electrocardiogram | Yes___ No_x_ |
| 3 | Electroencephalogram | Yes_x_ No___ |
| 4 | Arterial or cranial angiogram | Yes_x_ No___ |
| 5. | MRI, cat-scan or x-ray of the head, neck or brain | Yes_x_ No___ |
| 6. | MRA (magnetic resonance angiography) | Yes___ No_x_ |
| 7 | Other diagnostic test or imaging of the brain | Yes___ No_x_ |

R For each test for which you answered yes, please identify the treating physician and approximate date of the test

| | | |
|---|---|---|
| CT, MRI, Angiogram | St Mary's Hospital | January 1998 |
| Test | Treating Physician | Approximate date |
| EKG | St Mary's | January 1998 |
| Test | Treating Physician | Approximate date |
| CT | Falls Memorial Hospital | January 1998 |
| Test | Treating Physician | Approximate date |

VII. USE OF COUGH AND COLD MEDICATIONS

Please complete the following chart with respect to each cough and cold medication and product you have taken during the 10 years before your alleged PPA injury through the present

A. Prescription Medications or Products

| Generic Name | Brand Name | Physical Description Including Shape and Color (For Example- round blue tablets ) | Description of Packaging | Single Dosage Taken | 24 Hour Dosage Taken | First & Last Dates of Use | Prescribed By | Location Where Purchased/ Obtained | Condition Or Symptoms Being Treated |
|---|---|---|---|---|---|---|---|---|---|

**Cough medicine with codeine. Prescription obtained from Duluth Clinic Pharmacy in International Falls.**

B. Over-The-Counter Products Or Medications

| Specific Name Of Product | Manufacturer, If Known | Physical Description Including Shape and Color (For Example-round blue tablets) | Description of Packaging | Single Dosage Taken | 24 Hour Dosage Taken | First and Last Dates of Use | Taken On Whose Advice Or Suggestion | Location Where Purchased Or Obtained | Condition Or Symptoms Being Treated |
|---|---|---|---|---|---|---|---|---|---|
| **Comtrex Multi-Symptom Maximum Strength Non-Drowsy Liqui-Gels** | | **Orange liqui-gels** | **Yellow and white box** | **2 pills** | **4 pills** | **1-6-98** | **Unknown** | **K-Mart** | **Cough/cold** |
| **Comtrex Maximum Strength Liqui-Gels** | | **Yellow liquid-gels** | **Yellow and white box** | **2 pills** | **2 pills** | **1-5-98** | **Unknown** | **K-Mart** | **Cough-cold** |

## VIII. USE OF WEIGHT LOSS, DIET OR APPETITE SUPPRESSANT PRODUCTS OR MEDICATIONS

If you have used weight loss, diet or appetite suppressant products or medications during the 10 years before your alleged PPA injury through the present, please complete the following chart with respect to each such medication or product you have taken within that time.

### A. Prescription Medications

| Specific Name Of Product | Manufacturer, If Known | Physical Description Including Shape and Color (For Example-round blue tablets) | Description of Packaging | Single Dosage Taken | 24 Hour Dosage Taken | First and Last Dates of Use | Taken On Whose Advice Or Suggestion | Location Where Purchased Or Obtained | Condition Or Symptoms Being Treated |
|---|---|---|---|---|---|---|---|---|---|

None



019186 0028/902317 1

B **Over-The-Counter Products Or Medications**

| Specific Name Of Product | Manufacturer, If Known | Physical Description Including Shape and Color (For Example-round blue tablets) | Description of Packaging | Single Dosage Taken | 24 Hour Dosage Taken | First and Last Dates of Use | Taken On Whose Advice Or Suggestion | Location Where Purchased Or Obtained | Condition Or Symptoms Being Treated |
|---|---|---|---|---|---|---|---|---|---|
| | | **None** | | | | | | | |

IX. THE INJURY

A. On what date and time did you first experience any symptoms you believe are related to the injury alleged in your Complaint?

January 6, 1998

B. In what city and state were you when you experienced those symptoms?

International Falls, MN

C. Were there any witnesses to the symptoms identified above? If so, state their names, addresses, phone numbers and relationship to you

Rachel Cowlisha, co-worker, 1012 - 9th Street, International Falls, MN, 218-285-9254

Edward Taylor, father, deceased

Breanna and Aubree Salyers, daughters, 1520 Main Avenue, International Falls, MN

D When did you first contact a doctor or healthcare professional concerning this injury?

Approximately 5 30 – 6 00 pm

E Who was the first such contact?

Falls Medical Center

F. If you were taken to a doctor or health care facility for the injury alleged in the complaint, state the name and address of the persons, police department, fire department, emergency medical workers, or ambulance company who took you to the doctor or health care facility

Rachel Cowlisha, 1012 - 9th Street, International Falls, MN – to Falls Memorial

International Falls Ambulance – transfer to St Mary's Medical Center

G When did you obtain the PPA-containing medication which you claim caused your injuries?

Specific date unknown

H State the name and address of the retailer from whom the PPA-containing medication which you claim caused your injuries was obtained?

K-Mart, Highway 11, International Falls, MN

I Was there any expiration date on that medicine? If so, what? Unknown

J. Describe how the medicine was packaged, including the size and color of the packaging and/or box. Yellow and white box, red lettering

K. If that packaging contained a "seal," was the seal broken when you obtained the medicine? No

L Who has possession of the packaging, inserts and labeling of all PPA-containing products which you claim caused your injuries? Discarded

M State any lot number or other identification numbers on the medicine or its packaging N/A

N State the form of the medicine (liquid, pill, capsule). Liqui-Gel

O. For each medication (prescription or over the counter), drug (licit or illicit), chemical, dietary supplement, appetite suppressant or herbal remedy you recall taking at any time during the thirty (30) days preceding your injury, complete the following table

| Name of Substance | Trade Name, If Any | Date and Time Taken | Amount Taken | Prescribed by or on Whose Advice | Reason for Taking It |
|---|---|---|---|---|---|
| Comtrex Non-drowsy product described above | | January 6, 1998 before noon and at app 4:30 p.m. | 2 liqui-gels before noon and 2 liqui-gels at app 4:30 p.m | N/A | Cold and sinus symptoms |
| Comtrex product described above | | January 5, 1998 before bedtime | 2 liqui-gels | N/A | Cold and sinus symptoms |

P For each caffeine-containing substance you recall taking during the 72 hours preceding the incident (including coffee, tea, colas, etc ), complete the following table

| Name of Substance | Trade Name, If Any | Date and Time Taken | Amount Taken | Amount Consumed Within 6 Hours of the Incident |
|---|---|---|---|---|
| Mountain Dew | | 3 bottles per day | | 1 bottle |

Q. Have you had discussions with any physician(s) about whether your condition is related to the use of PPA-containing medications?

Yes_____ No__x__

If yes, please identify

Name of doctor: ____________________

Address ____________________

Specialty: ____________________

Date of discussion: ____________________

<u>and</u>, check one of the following.

1 I was told my condition is related to the use of PPA-containing medications. _____

2. I was told my condition is not related to the use of PPA-containing medications _____

3 I was told my condition may be related to the use of PPA-containing medications _____

4 I was told by the doctor that he does not know whether my condition is related to the use of PPA-containing medications _____

5 I don't recall what I was told. _____

If discussed with more than one doctor, please copy and complete Part A for each.

## X. DAMAGE CLAIMS

A. If you claim or expect to claim that you lost earnings or suffered impairment of earnings capacity as a result of any condition which you believe was caused by your PPA-containing medication

1. Complete the following information with respect to your employment for ten years prior to your alleged PPA injury to the present.

| Employers | Address | Type of Business/Position | Dates of Employment | Salary | Overtime | Bonus |
|---|---|---|---|---|---|---|
| Uniprise | 1902 Valley Pine Circle, IF, MN | Claims Reviewer | 1995 – 1998 | App $800/mo. | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

2 State the total amount of time which you have lost from work as a result of any condition which you claim or believe was caused by your use of PPA-containing medications and the amount of income which you lost

Investigation is pending.

B Have you paid or incurred any medical expenses, including amounts billed or paid by insurers and other third party payors, which are related to any condition which you claim or believe was caused by your use of PPA-containing medications for which you seek recovery in the action which you have filed?

Yes___x__ No_____

If yes, please state the total amount of such expenses at this time $ Pending

C Please identify all persons who you believe possess information concerning your injury and/or your current medical conditions and for each, state their name, address, telephone number and a description of the information you believe they possess

Johnny Taylor, 1520 Main Ave., International Falls, MN

Brenda Bauer, P O. Box 244, Ranier, MN 56668

Rachel Cowlisha, 1012 – 9th Street, International Falls, 218-285-9254

Plaintiff's treating physicians

All have information regarding plaintiff's injury and current medical condition

## XI. DOCUMENTS

Please attach the following documents to this declaration, to the extent that such documents are currently in your possession or in the possession of your lawyers

A. TEN ORIGINAL SIGNED authorizations for the release of records in the form appended hereto.

B. A copy of all medical records from any physician, diet center, hospital or health care provider, who treated you for any disease, condition or symptom referred to in any or your responses to the questions above

C. A copy of all medical records from any physician, diet center, hospital or health care provider, who treated you at any time for any neurological or cardiovascular disease, condition or symptom referred to in your response to the questions above

D To the extent not included in the foregoing, all records relating to any examination by a physician or other health care provider, conducted for any purpose, other than psychiatric or psychological evaluation, in the period beginning five (5) years prior to the date upon which you used the PPA-containing medications you claim caused your injury to date

E. If you have been the claimant or subject of any worker's compensation, Social Security or other disability proceeding, all documents relating to such proceeding

F All diagnostic tests or test results including reports of echocardiograms, angiograms, cat-scans, MRIs, MRAs or electroencephalograms taken within the last ten (10) years

G All diagnostic tests or test results including reports of echocardiograms, angiograms, cat-scans, MRIs, MRAs or electroencephalograms relating to any neurological or cardiovascular condition done at any time

H Copies of all documents from physicians, healthcare providers or others relating to the use of PPA-containing medications, or to any condition you claim is related to the use of PPA-containing medications

I All documents constituting, concerning or relating to product use instructions, product warnings, package inserts, height and weight charts, pharmacy handouts or other materials distributed with or provided to you in connection with your use of PPA-containing medications

J. Copies of advertisements or promotions for PPA-containing medications

K The entire packaging, including the bottle, box and label for the PPA-containing medication you allege caused you injury and any remaining medication

L All documents relating to your purchase of PPA-containing medications, including, but not limited to, receipts, prescriptions or records of purchase

M. All documents relating to PPA or any alleged health risks or hazards related to PPA in your possession at or before the time of the injury alleged in your Complaint

N. All documents you (and not your lawyer) obtained directly or indirectly from any defendant

O All photographs, drawings, journals, slides or videos relating to your alleged injury after the incident, including "day-in-the-life" videotapes.

P. Copies of all documents you (and not your attorneys) obtained from any source related to PPA or to the alleged effects of ingesting PPA-containing products or medications.

Q If you claim you have suffered a loss of earnings or earning capacity, your federal tax returns for each of the years from ten (10) years prior to your injury to the present

R. If you claim any loss from medical expenses, copies of all bills from any physician, hospital, pharmacy or other health care provider

S Copies of letters testamentary or letters of administration relating to your status as plaintiff.

T Decedent's death certificate (if applicable)

# DECLARATION

I declare under penalty of perjury that all of the information provided in this Plaintiff's Fact Sheet is true and correct to the best of my knowledge, information and belief, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, information and belief, that I have supplied all the documents requested in Part XI of this declaration, to the extent that such documents are in my possession or in the possession of my lawyers, and that I have supplied the authorizations attached to this declaration

______________________________ ______________________________

Signature Date

IN RE PHENYLPROPANOLAMINE ("PPA") PRODUCTS LIABILITY LITIGATION
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE
MDL NO 1407

## LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

EACH PLAINTIFF WHO IS REQUIRED TO COMPLETE A DECLARATION MUST FULLY AND ACCURATELY COMPLETE THIS FORM LISTING MEDICAL CARE PROVIDERS AND OTHER SOURCES OF INFORMATION AS REQUESTED.

List the name and address of each of the following

A. Your current primary care physician(s)·

Dr. Marc Gordon, Duluth Clinic, International Falls, MN
Name

105 Shorewood Drive
Street Address

International Falls, MN 56649
City, State, Zip Code

B To the best of your ability, identify each of your primary care physicians for the 10 years prior to your PPA injury through the present.

1 Same as above ______________
Name — Approximate dates

______________
Last known address

______________
City, State, Zip Code

2 ______________ ______________
Name — Approximate dates

______________
Last known address

______________
City, State, Zip Code

3\. ______________________ ______________________
Name Approximate dates

______________________
Last known address

______________________
City, State, Zip Code

4\. ______________________ ______________________
Name Approximate dates

______________________
Last known address

______________________
City, State, Zip Code

C Each cardiologist or neurologist who has ever seen or treated you

1 St. Mary's Hospital
Name

Neurology
Specialty

2427 W 4th St
Street Address

Duluth, MN 55806
City, State, Zip Code

2\. ______________________
Name

______________________
Specialty

______________________
Street Address

______________________
City, State, Zip Code

3 ______________________________
Name

______________________________
Specialty

______________________________
Street Address

______________________________
City, State, Zip Code

4. ______________________________
Name

______________________________
Specialty

______________________________
Street Address

______________________________
City, State, Zip Code

D. Each nutritionist/dietician or other weight loss counselor who has ever seen or treated you

1 ______________________________
Name

______________________________
Specialty

______________________________
Street Address

______________________________
City, State, Zip Code

2 ________________________________________

Name

________________________________________

Specialty

________________________________________

Street Address

________________________________________

City, State, Zip Code

3. ________________________________________

Name

________________________________________

Specialty

________________________________________

Street Address

________________________________________

City, State, Zip Code

4 ________________________________________

Name

________________________________________

Specialty

________________________________________

Street Address

________________________________________

City, State, Zip Code

E. Each hospital where you have received inpatient treatment during the 10 years prior to your PPA injury through the present

1 St. Mary's Hospital
Name

Neurology
Specialty

See above
Street Address

City, State, Zip Code

2 Falls Memorial Hospital
Name

General Surgery for appendectomy, Obstetrics
Specialty

1400 Highway 71
Street Address

International Falls, MN 56649
City, State, Zip Code

3
Name

Specialty

Street Address

City, State, Zip Code

4 ______________________________
Name

______________________________
Specialty

______________________________
Street Address

______________________________
City, State, Zip Code

F **Each hospital or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the 10 years prior to your PPA injury through the present**

1 Falls Memorial Hospital
Name

Emergency Room
Specialty

1400 Highway 72
Street Address

International Falls, MN 56649
City, State, Zip Code

2 St Mary's Hospital
Name

Emergency Room
Specialty

2427 W 4th St
Street Address

Duluth, MN 55806
City, State, Zip Code

3 ________________________________________

Name

________________________________________

Specialty

________________________________________

Street Address

________________________________________

City, State, Zip Code

4 ________________________________________

Name

________________________________________

Specialty

________________________________________

Street Address

________________________________________

City, State, Zip Code

5 ________________________________________

Name

________________________________________

Specialty

________________________________________

Street Address

________________________________________

City, State, Zip Code

G. Each other physician or healthcare provider from whom you have received treatment, with whom you have consulted regarding your health, or who has examined you in the 10 years prior to your PPA injury through the present, *with the exception of psychiatrists or psychologists:*

1. Duluth Clinic, Duluth
Name

Specialty

407 E. 3rd Street
Street Address

Duluth, MN
City, State, Zip Code

2
Name

Specialty

Street Address

City, State, Zip Code

3.
Name

Specialty

Street Address

City, State, Zip Code

4 ______________________________
Name

______________________________
Specialty

______________________________
Street Address

______________________________
City, State, Zip Code

5 ______________________________
Name

______________________________
Specialty

______________________________
Street Address

______________________________
City, State, Zip Code

6 ______________________________
Name

______________________________
Specialty

______________________________
Street Address

______________________________
City, State, Zip Code

7. ______________________________
Name

______________________________
Specialty

______________________________
Street Address

______________________________
City, State, Zip Code

8 ______________________________
Name

______________________________
Specialty

______________________________
Street Address

______________________________
City, State, Zip Code

9 ______________________________
Name

______________________________
Specialty

______________________________
Street Address

______________________________
City, State, Zip Code

10. ______________________________
Name

______________________________
Specialty

______________________________
Street Address

______________________________
City, State, Zip Code

H Each pharmacy, drugstore and the like where you have had prescriptions filled during the 10 years prior to your PPA injury through the present

1 Snyder Drugs
Name

Highway 53
Street Address

International Falls, MN
City, State, Zip Code

2. Duluth Clinic Pharmacy
Name

105 Shorewood Drive
Street Address

International Falls, MN 56649
City, State, Zip Code

3 ____________________
Name

____________________
Street Address

____________________
City, State, Zip Code

4 ____________________
Name

____________________
Street Address

____________________
City, State, Zip Code

5. ______________________________
Name

______________________________
Street Address

______________________________
City, State, Zip Code

I If, *but only if*, you claim that you suffered psychological or emotional injuries as a result of using PPA-containing medications, list each psychiatrist, psychologist, mental health counselor, therapist and/or social worker from whom you have received treatment or with whom you have consulted regarding your health during the 10 years prior to your PPA injury through the present.

1 Salvation Army
Name

1301 3rd Ave. West
Street Address

International Falls, MN 56649
City, State, Zip Code

2 Northland Mental Health Center
Name

1404 Hwy 71
Street Address

International Falls, MN 56649
City, State, Zip Code

3. ______________________________
Name

______________________________
Street Address

______________________________
City, State, Zip Code

J If you have submitted a claim for social security disability benefits in the 10 years prior to your PPA injury through the present, state the name and address of the office which is most likely to have records concerning your claim

MN Department of Economic Security
Name

P.O. Box 64709
Street Address

St. Paul, MN 55164
City, State, Zip Code

K If you have submitted a claim for workers compensation in the 10 years prior to your PPA injury through the present, state the name and address of the office which is most likely to have records concerning your claim

____________________
Name

____________________
Street Address

____________________
City, State, Zip Code

[ATTACH ADDITIONAL SHEETS, IF NECESSARY TO COMPLETE EACH SUBSECTION]

IN RE. PHENYLPROPANOLAMINE ("PPA") PRODUCTS LIABILITY LITIGATION
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE
MDL NO 1407

## AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS

To: ________________________________
Name

________________________________
Address

________________________________
City, State and Zip Code

This will authorize you to furnish copies of all medical records, including, but not limited to, medical reports, radiographic films, CT scans, X-rays, MRI films, MRA films, correspondence, progress notes, prescription records, echocardiographic recordings, written statements, employment records, wage records, disability records, medical bills, and other documents in your possession concerning ________________________________

Name of Patient

whose date of birth is ____________________ and whose social security number is __________ ____________________

You are authorized to release the above records to the following representatives of defendants in the above-entitled matter who have agreed to pay reasonable charges made by you to supply copies of such records

________________________________
Name of Representative

________________________________
Representative Capacity (e g. attorney, records requestor, agent, etc.)

________________________________
Street Address

________________________________________
City, State and Zip Code

This authorization does not authorize you to disclose anything other than documents and records to anyone

This authorization is not valid unless the record requestor named above has executed the acknowledgment at the bottom of this authorization.

This authorization shall be considered as continuing in nature and is to be given full force and effect to release information of any of the foregoing learned or determined after the date hereof. It is expressly understood by the undersigned and you are hereby authorized to accept a copy or photocopy of this authorization with the same validity as though an original had been presented to you

Date ____________________ ______________________________
Patient or Guardian Signature

Date ____________________ ______________________________
Witness Signature

AUTHORIZATION

The undersigned, as the record requestor named in the above medical authorization, hereby declares under penalty of perjury, pursuant to 28 U S C. § 1746, that the attorney for the patient named in the foregoing medical authorization has been given notice that the authorization will be used to request records from the person or entity to whom it is addressed, if named in Plaintiff's List of Medical Providers, or, if the authorization is addressed to a third party not listed in Plaintiff's List of Medical Providers, the attorney for the patient named has been given ten (10) days advance notice and has been afforded an opportunity to object to the request, and any objections have been resolved The attorney for the patient named in the foregoing medical authorization has also been afforded an opportunity to order copies of the records requested from the undersigned requestor at a reasonable cost

______________________________

**[NOTE: COMPLETE THIS FORM ONLY IF YOU ARE MAKING A CLAIM FOR LOST EARNING OR LOST EARNING CAPACITY]**

IN RE: PHENYLPROPANOLAMINE ("PPA") PRODUCTS LIABILITY LITIGATION
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE
MDL NO. 1407

AUTHORIZATION FOR RELEASE OF EMPLOYMENT
AND UNEMPLOYMENT INFORMATION AND RECORDS

To: ______________________________
Name

______________________________
Address

______________________________
City, State and Zip Code

This will authorize you to furnish copies of all applications for employment, resumes, records of all positions held, job descriptions of positions held, salary and/or compensation records, performance evaluations and reports, statements and comments of fellow employees, attendance records, W-2's, workers' compensation files, all hospital, physician, clinic, infirmary, nurse, psychiatric and dental records; x-rays, test results, physical examination records, any records pertaining to claims made relating to health, disability or accidents in which I was involved including correspondence, reports, claim forms, questionnaires, records of payments made to me or on my behalf, and any other records relating to my employment with the above-named institution concerning ______________________________________________

Name of Employee

whose date of birth is ____________________ and whose social security number is __________

____________________

You are authorized to release the above records to the following representatives of defendants in the above-entitled matter who have agreed to pay reasonable charges made by you to supply copies of such records.

______________________________________________
Name of Representative

______________________________________________
Representative Capacity (e g. attorney, records requestor, agent, etc.)

______________________________________________
Street Address

______________________________________________
City, State and Zip Code

This authorization does not authorize you to disclose anything other than documents and records to anyone

This authorization is not valid unless the record requestor named above has executed the acknowledgment at the bottom of this authorization.

This authorization shall be considered as continuing in nature and is to be given full force and effect to release information of any of the foregoing learned or determined after the date hereof. It is expressly understood by the undersigned and you are hereby authorized to accept a copy or photocopy of this authorization with the same validity as though an original had been presented to you

Date: ______________________ ______________________________
Employee or Guardian Signature

Date: ______________________ ______________________________
Witness Signature



019186.0028/902317 1

## AUTHORIZATION

The undersigned, as the record requestor named in the above authorization, hereby declares under penalty of perjury, pursuant to 28 U S C. § 1746, that the attorney for the employee named in the foregoing authorization has been given notice that the authorization will be used to request records from the person or entity to whom it is addressed, the attorney for the employee named has been given ten (10) days advance notice and has been afforded an opportunity to object to the request, and any objections have been resolved The attorney for the employee named in the foregoing authorization has also been afforded an opportunity to order copies of the records requested from the undersigned requestor at a reasonable cost.

__________________________________

**[NOTE: COMPLETE THIS FORM ONLY IF YOU HAVE MADE A WORKERS' COMPENSATION OR SOCIAL SECURITY DISABILITY CLAIM DURING THE 10 YEARS PRIOR TO YOUR PPA INJURY THROUGH THE PRESENT]**

IN RE: PHENYLPROPANOLAMINE ("PPA") PRODUCTS LIABILITY LITIGATION
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE
MDL NO 1407

AUTHORIZATION FOR RELEASE OF
WORKERS' COMPENSATION AND SOCIAL SECURITY RECORDS

To: ______________________________
Name

______________________________
Address

______________________________
City, State and Zip Code

This will authorize you to furnish copies of any and all workers' compensation and social security records of any sort, including but not limited to, statements, applications, disclosures, correspondence, notes, settlements, agreements, contracts, or other documents, concerning _____

______________________________________________________________

Name of Claimant

whose date of birth is ____________________ and whose social security number is __________ ____________________.

You are authorized to release the above records to the following representatives of defendants in the above-entitled matter who have agreed to pay reasonable charges made by you to supply copies of such records.

______________________________________________
Name of Representative

______________________________________________
Representative Capacity (e.g. attorney, records requestor, agent, etc.)

______________________________________________
Street Address

______________________________________________
City, State and Zip Code

This authorization does not authorize you to disclose anything other than documents and records to anyone

This authorization is not valid unless the record requestor named above has executed the acknowledgment at the bottom of this authorization

This authorization shall be considered as continuing in nature and is to be given full force and effect to release information of any of the foregoing learned or determined after the date hereof It is expressly understood by the undersigned and you are hereby authorized to accept a copy or photocopy of this authorization with the same validity as though an original had been presented to you

Date ____________________ ______________________________
Claimant or Guardian Signature

Date ____________________ ______________________________
Witness Signature

# AUTHORIZATION

The undersigned, as the record requestor named in the above authorization, hereby declares under penalty of perjury, pursuant to 28 U S.C § 1746, that the attorney for the claimant named in the foregoing medical authorization has been given notice that the authorization will be used to request records from the person or entity to whom it is addressed, the attorney for the patient named has been given ten (10) days advance notice and has been afforded an opportunity to object to the request, and any objections have been resolved. The attorney for the claimant named in the foregoing authorization has also been afforded an opportunity to order copies of the records requested from the undersigned requestor at a reasonable cost.

______________________________

**[NOTE: COMPLETE THIS FORM ONLY IF YOU ARE MAKING A CLAIM FOR LOST EARNING OR LOST EARNING CAPACITY]**

IN RE· PHENYLPROPANOLAMINE ("PPA") PRODUCTS LIABILITY LITIGATION
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE
MDL NO. 1407

## AUTHORIZATION FOR RELEASE OF FINANCIAL/TAX RECORDS

To. ______________________________
Name

______________________________
Address

______________________________
City, State and Zip Code

This will authorize you to furnish copies of all any and all financial/tax records of any sort, including but not limited to, statements, applications, disclosures, correspondence, notes, agreements, contracts, or other documents, concerning ______________________________.

Name of Taxpayer

whose date of birth is _______________ and whose Social Security number is _______________

You are authorized to release the above records to the following representatives of defendants in the above-entitled matter who have agreed to pay reasonable charges made by you to supply copies of such records

______________________________
Name of Representative

______________________________
Representative Capacity (e.g. attorney, records requestor, agent, etc.)

______________________________
Street Address

019186.0028/902317 1

______________________________
City, State and Zip Code

This authorization does not authorize you to disclose anything other than documents and records to anyone.

This authorization is not valid unless the record requestor named above has executed the acknowledgment at the bottom of this authorization

This authorization shall be considered as continuing in nature and is to be given full force and effect to release information of any of the foregoing learned or determined after the date hereof It is expressly understood by the undersigned and you are hereby authorized to accept a copy or photocopy of this authorization with the same validity as though an original had been presented to you.

Date:________ ____________________
Taxpayer or Guardian Signature

Date ________ ____________________
Witness Signature

AUTHORIZATION

The undersigned, as the record requestor named in the above authorization, hereby declares under penalty of perjury, pursuant to 28 U.S.C § 1746, that the attorney for the taxpayer named in the foregoing authorization has been given notice that the authorization will be used to request records from the person or entity to whom it is addressed, the attorney for the patient named has been given ten (10) days advance notice and has been afforded an opportunity to object to the request, and any objections have been resolved The attorney for the taxpayer named in the foregoing authorization has also been afforded an opportunity to order copies of the records requested from the undersigned requestor at a reasonable cost

______________________________

SEDGWICK,
DETERT, MORAN
& ARNOLD

May 15, 2002

Jane E. Joseph, Esq.
Lopez, Hodes, Restaino, Milman, Skikos & Polos
450 Newport Center Drive
Second Floor
Newport Beach, California 92660

**RE: Tammy Taylor v. BMS, MDL 1407, Minnesota Civil 01-2122**

Dear Ms. Joseph,

Following our telephone conversation on Friday, May 10, 2002, I verified that pursuant to Case Management Order No.1, MDL Docket No, 1407, as issued by Judge Rothstein, all proceedings in cases transferred to the MDL are stayed except for specific proceedings permitted by Case Management Orders Nos. 1 through 6. To the best of our knowledge, no such order lifting the stay upon the filing of responsive pleadings has been issued to date.

Once we receive notice that the stay issued in Case Management Order No. 1 has been lifted, we will file an Answer on behalf of our client in the above referenced action

If you believe that this stay has already been lifted, please provide our office with a copy of the relevant order. Please contact me if you have any questions. Thank you.

Very truly yours,

Bridget M. Keysa

Bridget M. Keysa

One Gateway Center Eleventh Floor Newark, New Jersey 07102-5311
Telephone 973.242.0002 Facsimile 973.242.8099

San Francisco 415.781.7900 | Los Angeles 213.426.6900 | Orange County 949.852.8200 | Chicago 312 641.9050 | New York 212 422.0202 | London 44.20 7929.1829 | Zurich 41.1.201 1730 | Paris 33.1.4704.5582

LOPEZ, HODES, RESTAINO, MILMAN & SKIKOS

A LAW CORPORATION

450 NEWPORT CENTER DRIVE • SECOND FLOOR • NEWPORT BEACH CALIFORNIA 92660
TELEPHONE / 949 640 8222 FACSIMILE / 949 640 8294

June 5, 2002

Bridget M. Keysa
SEDGWICK, DETERT,
MORAN & ARNOLD
One Gateway Center, 11th Floor
Newark, NJ 07102

COPY

**Re: Tammy Taylor v. BMS, MDL 1407,
Minnesota Civil 01-2122**

Dear Ms. Keysa,

I received your letter of May 15, 2002 regarding the above-referenced matter.

In fact, Case Management Order No. 1 only refers to cases transferred to MDL 1407. At the time your client's Answer was due, this matter had not been transferred to the MDL. Therefore, your Answer is long past due and you are in default.

Also, please be advised that all communications regarding this matter should be directed to me at the address below:

13938A Cedar Road, #373
Cleveland, Ohio 44118

My telephone number is 216-921-9314; fax number is 216-921-9334.

Very truly yours,

Jane E. Joseph, Esq.

JEJ/aos

**.e Joseph**

| | |
|---|---|
| **rom:** | Trapp, Kaj G. [KGT@admiralty.com] |
| **Sent:** | Monday, September 09, 2002 4:50 PM |
| **To:** | 'Jane Joseph' |
| **Subject:** | RE: Tammy Taylor v Bristol Myers Squibb |

Well I just checked all our hard copy records for July and parts of June and August with no luck. I also pulled up the docket for both the MDL and that case specifically from the 1st of June and couldn't find a record of anything being filed in that case during that time. So unless both my records and the Court's records are wrong, or they submitted it before the first of June, there isn't any record of Defense filing an answer in your case.

Let me know if there's anything else you can think of for me to try.

The Honorable Catherine Shaffer

RECEIVED JUN 18 2002 LAW OFFICE OF RON PEREY

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| DION NODURFT and ROBERT NODURFT, wife and husband, Plaintiffs, v. HERITAGE CONSUMER PRODUCTS LLC, a Delaware limited liability company, Defendant. | NO. 01-2-31788-1 SEA FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR DEFAULT JUDGMENT (Clerk's Action Required) |

**THIS MATTER**, having come before the Court for consideration pursuant to CR 55(b)(2) and KCLR 55(b), with the plaintiffs **DION** and **ROBERT NODURFT** being present and represented by their lawyers, Ron Perey and John C. Siegel; and the defendant **HERITAGE CONSUMER PRODUCTS LLC** ("Heritage") not appearing or responding and an Order of Default having been entered without notice on January 31, 2002 by the undersigned, Judge Catherine Shaffer; and the defendant having not sought to suspend proceedings in this case by obtaining an injunction as required by RCW 4.72.070, nor having sought a stay of proceedings as permitted by CR 62(b); and, in accordance with RCW 4.28.210, KCLR 55(b) and CR 55(a)(2), the defendant not being entitled to notice, nor entitled to defend; and the Court having received and considered Plaintiffs' Amended Motion for Entry of Findings of Fact, Conclusions of Law



LAW OFFICE OF RON PEREY
Market Place Tower
2025 First Avenue, Suite 350
Seattle, WA 98121
Telephone (206)443-7600
Facsimile (206)443-4785

ORIGINAL

and Default Judgment, Declaration of John C. Siegel Regarding Service of Summons and Complaint upon defendant Heritage with Exhibits 1-4, Plaintiffs' Memorandum of Law Regarding Damages with Exhibits I and 2, and the below-listed exhibits and attachments to Plaintiffs' Findings of Fact and Conclusions of Law for Default Judgment:

**Exhibit 1:** Complaint;

**Exhibit 2:** Summons;

**Exhibit 3:** Affidavit of Service upon Heritage Consumer Products LLC;

**Exhibit 4:** Order of Default against Heritage Consumer Products LLC;

**Exhibit 5:** Declaration of Dion Nodurft and Attachments:

A. 1996 IRS W-2 Wage Statement for Dion Nodurft;
B. 1997 IRS W-2 Wage Statement for Dion Nodurft;
C. 1998 IRS W-2 Wage Statement for Dion Nodurft;
D. 2000 IRS W-2 Wage Statement for Dion Nodurft;
E. Medical Definitions for Hemorrhagic and Stroke;
F. The Methodist Hospital Radiology Report;
G. The Methodist Hospital Operative Report dated February 8, 2000;
H. The Methodist Hospital Operative Report dated February 10, 2000;
I. The Methodist Hospital Discharge Summary;
J. Social Security Administration Disability Determination and Transmittal;
K. Social Security Administration Notice of Award;
L. Physical Evaluation by James E. Damon, M.D.;
M. Psychiatric Evaluation by Harold B. Johnston, M.D;
N. Psychological Evaluation by Carl E. Epp, Ph.D., L.P.

**Exhibit 6:** Declaration of Robert Nodurft;

**Exhibit 7:** Declaration of William Howell, M.D. and Attachments:

A. Medical Illustration of Dion Nodurft at surgery on February 8, 2000;
B. Medical Illustration of Operation Number 1 on February 8, 2000;
C. Medical Illustration of Operation Number 2 on February 10, 2000.

**Exhibit 8:** Declaration of John C. Siegel and Attachments:

A. May 10, 2000 Yale University School of Medicine report entitled, *"Phenylpropanolamine & Risk of Hemorrhagic Stroke: Final Report of the Hemorrhagic Stroke Project"* ("Yale Study");



LAW OFFICE OF RON PEREY
Market Place Tower
2025 First Avenue, Suite 320
Seattle, WA 98121
Telephone (206)443-7600
Facsimile (206)443-4785

B. November 3, 2000 United States Food and Drug Administration Letter to Manufacturers of Drug Products Containing Phenylpropanolamine;

C. November 6, 2000 United States Food and Drug Administration Public Health Advisory entitled, *Subject: Safety of Phenylpropanolamine.*

**Exhibit 9:** Declaration of Economist Robert W. Moss in Support of Award of Economic Damages in Default Judgment and Attachments:

A. *Curriculum Vitae;*

B. Report Regarding Economic Losses Suffered By Dion and Robert Nodurft dated April 3, 2002 and exhibits.

**Exhibit 10:** Declaration of Economist Robert W. Johnson in Support of Award of Loss of Enjoyment of Life Damages in Default Judgment and Attachments:

A. *Curriculum Vitae;*

B. Admitted Cases;

C. Report Regarding The Loss of Enjoyment of Life Suffered By Dion Nodurft dated April 9, 2002.

**Exhibit 11:** Affidavit of Ron Percy Regarding Lawyers' Fees and Costs.

NOW, THEREFORE, the Court makes the following Findings of Fact and Conclusions of Law

## I. FINDINGS OF FACT

1. The plaintiffs, Dion and Robert Nodurft ("the Nodurfts"), wife and husband are residents of the State of Washington. Dion Nodurft purchased and consumed "Allerest" allergy medicine containing the chemical phenylpropanolamine ("PPA"), without the knowledge that PPA is known to increase the risk of and cause hemorrhagic strokes. The Nordurfts were residents of Texas at the time of the events giving rise to this lawsuit. The Allerest that caused Dion Nodurft's stroke and injuries was purchased and consumed by her in Texas. The injuries suffered by Dion Nodurft as a result of consuming Allerest initially occurred in Texas, continue up to this time, and will continue for the rest of her life.



LAW OFFICE OF RON PEREY
Market Place Tower
2025 First Avenue, Suite 330
Seattle, WA 98121
Telephone (206)443-7600
Facsimile (206)443-4916

2. The defendant, Heritage Consumer Products LLC ("Heritage"), is a Delaware limited liability company, maintaining corporate offices in Brookfield, Connecticut. Heritage was, at the time of this occurrence, in the business of designing, manufacturing, marketing, supplying, labeling, promoting, selling, distributing and placing into the stream of commerce pharmaceuticals and other products containing PPA, including its over-the-counter allergy medicine Allerest. Heritage does business in all 50 states including Washington and Texas, and it designed, manufactured, marketed, sold and distributed the over-the-counter allergy medicine Allerest, which contained PPA, in interstate commerce in the states of Washington and Texas. Heritage is a "merchant" as defined in the Tex. Bus. & Com. Code § 2.104. At the time of the events described in the complaint, Heritage was, and presently is, doing business in the State of Washington and King County. The registered agent for service of process for Heritage is CT Corporation System, One Commercial Plaza, Hartford, CT 06103.

3. Defendant Heritage was properly served with the summons and complaint through its registered agent for service of process, CT Corporation System, One Commercial Plaza, Hartford, Connecticut 06103, on **November 30, 2001**. The summons and complaint were personally served upon Mary Foran, a Fulfillment Specialist for CT Corporation System, and a person authorized to accept service on behalf of defendant Heritage. The Affidavit of Service was filed with the court on **December 18, 2001**.

4. Defendant Heritage has not appeared or communicated with plaintiffs' counsel since service upon it was obtained, and has failed to file or serve an answer within sixty (60) days of the date of service, November 30, 2001, as required by CR 12(a)(3).

5. The plaintiffs' filed a Motion for Default and Supporting Affidavit on Wednesday, **January 30, 2002**. No notice of the Motion for Default was given to defendant Heritage in accordance with CR 55(a)(3). On Thursday, **January 31, 2002**, Judge Catherine Shaffer signed and entered an Order of Default against defendant Heritage because no



LAW OFFICE OF RON PERRY
[illegible]
SEATTLE, WA [illegible]
TELEPHONE [illegible]
FACSIMILE [illegible]

appearance was made and no answer was filed or served on its behalf within the time required by law.

6. Defendant Heritage has not appeared or communicated with plaintiffs' counsel since the entry of the Order of Default on January 31, 2002, nor has it sought an injunction to suspend the proceedings in this case as provided for in RCW 4.72.070, nor has it sought a stay of proceedings as provided for in CR 62(b).

7. Before February 7, 2000, Dion Nodurft was an active 42-year-old woman with a life expectancy of another 38.8 years, to age 81.2. She was a dynamic businesswoman and mother with no physical or cognitive impairments. She was an outdoorsperson and avid snow skier. She had no medical history or family history of hemorrhagic stroke and she was in excellent physical condition.

8. Defendant Heritage was the designer, manufacturer, marketer, seller, and distributor of Allerest, an over-the-counter allergy medicine containing the chemical PPA.

9. Induced by the marketing efforts of defendant Heritage, Dion Nodurft purchased Allerest in Washington and Texas for relief of allergy symptoms she was experiencing.

10. On February 6, 2000, Dion Nodurft consumed Allerest with PPA for allergy relief in accordance with defendant Heritage's instructions. Dion Nodurft purchased the Allerest she consumed on February 6, 2000 at an Eckerd's Drug Store in Houston, Texas. The Allerest came in a sealed container and was in the same condition when she purchased it that it was in when it was manufactured, and when it left defendant Heritage's exclusive control. The next day, on February 7, 2000, Dion Nodurft suffered a hemorrhagic stroke.

11. When Dion Nodurft was taking Allerest, she was unaware that it contained the chemical PPA or that PPA could cause her to have a hemorrhagic stroke. A hemorrhagic stroke is a disruption of brain function with bleeding in the brain. Based on defendant Heritage's representations, Dion Nordurft believed Allerest was safe for use in allergy relief, and she had no



LAW OFFICE OF RON PEREY
MarketPlace Tower
2025 First Avenue, Suite 308
Seattle, WA 98121
Telephone (206) 443-7600
Facsimile (206) 443-4785

concern for serious side effects, such as hemorrhagic stroke.

12. After suffering the hemorrhagic stroke on February 7, 2000, Dion Nodurft was found unconscious on her bedroom floor by her husband Robert Nodurft who took her emergently to The Methodist Hospital in Houston, Texas. At The Methodist Hospital, Dion Nodurft underwent a physical examination, CT scan and MRI of her brain, which led to the diagnosis that she had suffered a hemorrhagic stroke.

13. As a result of the stroke, on **February 8, 2000**, Dion Nodurft underwent neurosurgery of the brain, which was performed by Todd Trask, M.D., a neurosurgeon at The Methodist Hospital in Houston, Texas. The neurosurgery confirmed that Dion Nodurft had a right frontal lobe hematoma (a collection of blood in the brain) and a ruptured aneurysm at the bifurcation of the right middle cerebral artery. The neurosurgery involved cutting open Dion's skull, evacuating the hematoma with suction, clipping the aneurysms, inserting a subdural drain to remove fluid that had built up around her brain and securing the bone flap with plates and screws.

14. Two days later, on **February 10, 2000**, due to the development of right frontal lobe and temporal lobe hematomas and life-threatening brain swelling, Dr. Trask re-opened Dion's skull and performed a second neurosurgery. During this neurosurgery, a portion of Dion's brain was removed (partial right frontal lobectomy) to relieve pressure. The hematomas were evacuated with suction and a shunt was inserted to drain fluid from her brain ventricles (ventriculostomy).

15. Dion Nodurft spent two weeks in a coma in the Intensive Care Unit and one week in a regular patient room at The Methodist Hospital in Houston under the care of a team of physicians headed by Dr. Trask. She was discharged from the hospital on **February 25, 2000**. When Dion left the hospital she was debilitated, unable to walk, her hair was completely shaved off, and she had a visible scar running from below her right ear up to the crown of her head and



LAW OFFICE OF RON PERRY
Market Place Tower
2025 First Avenue, Suite 390
Seattle, WA 98121
Telephone (206)443-7609
Facsimile (206)443-4785

then down the middle of her head to the hairline at her forehead and a visible indentation on the right side of her forehead, both of which are still present and visible. Dion was released to go home where she received home healthcare for a week. She needed help eating, taking medication and with physical therapy. She needed physical therapy to learn to walk again and to do the normal activities of daily life. Dion continued to receive physical therapy for the next 6 months.

16. It took several months for Dion to recover sufficiently enough to walk without the help of a walker or someone's assistance. Robert was very concerned about leaving her and returning to work because she was unable to care for herself and he was worried that she would accidentally injure herself. Because neither Dion nor Robert could return to work, they both lost their jobs at Stroud Systems, Inc., as well as their opportunity to purchase the company. Because the Nodurfts had some savings and their house was paid off, Robert was able to stay at home and care for Dion for six weeks. During this time off work, Robert lost income of $10,000. Thereafter, Robert was able to return to work, but had to find a new job. Dion is physically, mentally and cognitively disabled and has been unable to work at any job since suffering her stroke on February 7, 2000.

17. When Dion Nodurft consumed Allerest allergy medicine on February 6, 2000, she was unaware that it was defective and not reasonably safe as designed, manufactured, distributed, marketed and sold.

18. Allerest was defective in design in that when it left the exclusive control of defendant Heritage and reached Dion Nodurft, without change in its condition, it was unreasonably dangerous. It was defective and unreasonably dangerous because it contained PPA, a chemical known to increase the risk of and cause hemorrhagic stroke. Allerest presented a greater risk of bodily harm than an ordinary consumer would expect and presented a greater risk of bodily harm than other, safer allergy relief products that did not contain PPA. When the Allerest that caused Dion Nodurft's injuries left the control of defendant Heritage and was



LAW OFFICE OF RON PERLEY
[illegible]

purchased and consumed by her, there existed a safer alternative design for it not including PPA, which would have eliminated the risk of hemorrhagic stroke without substantially impairing the product's utility and was economically and technologically feasible by the application of existing or reasonably achievable scientific knowledge. The defective nature of the product Allerest was a producing/proximate cause of Dion Nodurft's stroke and the consequential injuries and damages sustained by Dion and Robert Nodurft.

19. Allerest was defective as manufactured in that at the time it left the control of defendant Heritage and was purchased by Dion Nodurft, without change in its condition, Heritage knew or should have known that Allerest containing PPA was unreasonably dangerous as manufactured and posed a serious risk of hemorrhagic stroke. Allerest deviated, in terms of its safety and quality, in that the specifications of defendant Heritage were intended to produce a product that was safe when used as directed for allergy relief. The inclusion of PPA in the manufacturing process of Allerest rendered the product unreasonably dangerous and defective. At the time the Allerest was purchased and ingested by Dion Nodurft, its defective and dangerous condition was unknown and unknowable to her, but known to defendant Heritage. The defective nature of the product Allerest was a producing/proximate cause of Dion Nodurft's stroke and the consequential injuries and damages sustained by Dion and Robert Nodurft.

20. Allerest was defectively marketed in that defendant Heritage knew or should have known of the risk of hemorrhagic stroke associated with the use of Allerest containing PPA, yet it failed to provide any warnings pertaining to this risk. Defendant Heritage breached its duty to warn Dion Nodurft and the general public of the foreseeable risk of hemorrhagic stroke by failing to provide warnings about the risk of hemorrhagic stroke associated with the use of Allerest containing PPA; and instead, Heritage continued to actively market Allerest "as is." The lack of warnings rendered Allerest unreasonably dangerous and defective and rendered Allerest's labeling inadequate, unclear, untruthful, false, fraudulent and misleading.



LAW OFFICE OF RON PERRY
[illegible]
[illegible], WA 98121
Telephone (206)[illegible]
Facsimile (206)[illegible]

21. Allerest was unmerchantable because of inadequate warnings on its container, package, label and package insert regarding the health risks, including the risk of hemorrhagic stroke, associated with Allerest, and because of defendant Heritage's false promises and affirmations that Allerest was safe when used as directed.

22. Allerest was not fit for the purpose of allergy relief and did not conform to defendant Heritage's express warranties that Allerest was safe for use for allergy relief in accordance with the instructions provided. This description forms part of the basis of the bargain and creates an express warranty that Allerest conforms to the description. Defendant Heritage breached this warranty by selling a medical product, Allerest, which was inherently unsafe even when used in accordance with the instructions provided.

23. Defendant Heritage's failure to provide any warnings about the risk of hemorrhagic stroke associated with the use of Allerest containing PPA, and its breach of implied and express warranties were producing/proximate causes of Dion Nodurft's stroke and the consequential injuries and damages sustained by Dion and Robert Nodurft.

24. Defendant Heritage falsely, negligently and fraudulently represented, advertised, and communicated to Dion Nodurft and the general public that Allerest was safe for allergy relief when used as instructed. These material representations were false, as Allerest was unreasonably dangerous, not safe when used as instructed and posed a serious risk of injury or death due to hemorrhagic stroke to those who used it. Defendant Heritage failed to exercise reasonable care in ascertaining the accuracy of the information regarding the safe use of Allerest, and otherwise failed to exercise reasonable care in communicating the information to Dion Nodurft and the general public. In justifiable reliance upon defendant Heritage's negligent and fraudulent misrepresentations, Dion Nodurft was induced to purchase and use Allerest for allergy relief. Defendant Heritage's misrepresentations were a producing/proximate cause of Dion Nodurft's stroke and the consequential injuries and damages sustained by Dion and Robert



LAW OFFICE OF RON PEREY
[illegible]
[illegible]
SEATTLE, WA [illegible]
Telephone (206)443-[illegible]
Facsimile (206)443-4785

Nodurft.

25. Defendant Heritage's acts and omissions, when viewed objectively, from the standpoint of defendant Heritage at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of potential harm to others, and were of such a nature that defendant Heritage had, or should have had, a subjective awareness of the risk of hemorrhagic stroke associated with the use of Allerest containing PPA, but nevertheless proceeded to manufacture, market, sell and distribute Allerest containing PPA with a conscious indifference to the rights, safety and welfare of consumers.

26. Defendant Heritage, in the conduct of its trade and business, engaged in false, misleading and deceptive acts and practices in the marketing, labeling selling, distributing and placing into the stream of commerce its product Allerest, which had the capacity to, and did, deceive the general public including Dion and Robert Nodurft. Defendant Heritage deliberately failed to disclose information pertaining to the serious health risks associated with the use of Allerest containing PPA, including the risk of hemorrhagic stroke, of which it possessed knowledge with the intention of inducing consumers to purchase its product. These violations were a producing/proximate cause of Dion Nodurft's stroke and the consequential injuries and damages sustained by Dion and Robert Nodurft.

27. Despite having knowledge of studies and case reports linking hemorrhagic strokes and deaths with the use of PPA as early as 1979, defendant Heritage continued to manufacture and sell Allerest and failed to remove Allerest from the market. Further, defendant Heritage failed to warn or inform consumers of the serious health risks of using Allerest containing PPA, including the risk of hemorrhagic stroke associated with the use of PPA. Instead, defendant Heritage continued to actively advertise and sell Allerest to the public throughout the United States.

28. On May 10, 2000, the Yale University School of Medicine formally announced its



LAW OFFICES OF RON PEREY
[illegible]
2025 First Avenue, Suite [illegible]
Seattle, WA 98121
Telephone (206) [illegible]
Facsimile (206) [illegible]

findings following six years of research on the associated increased risk of hemorrhagic stroke and the use of products containing PPA in a report entitled, "*Phenylpropanolamine & Risk of Hemorrhagic Stroke: Final Report of the Hemorrhagic Stroke Project*" ("Yale Study"). The Yale Study was subsequently published in the December 21, 2000 issue, volume 343: 1826-1832, number 25, of the New England Journal of Medicine. The Yale Study is an epidemiological study funded by the pharmaceutical industry that confirms earlier case reports and studies, and concludes that there is a causal link between the use of medicinal products containing PPA and an increased risk of hemorrhagic stroke. The Yale Study cites numerous published medical case reports and medical studies from as early as 1979 about the associated increased risk of hemorrhagic stroke and the use of products containing PPA.

29. On November 3, 2000, following the release of the Yale Study, the United States Food and Drug Administration ("FDA") issued a letter to all manufacturers of products containing PPA in which the FDA recommended the discontinuation of any and all products containing PPA. On November 6, 2000, the FDA issued a public health advisory regarding the causal connection between the use of products containing PPA and an increased risk of hemorrhagic stroke, and recommended that consumers not use any products containing PPA.

30. Dion Nodurft has suffered severe injuries and damages, including invasive surgeries, physical and cognitive impairment, emotional distress, loss of spousal consortium and other economic and noneconomic damages, which were directly caused by taking Allerest and the resultant hemorrhagic stroke. Robert Nodurft has also suffered damages, including emotional distress, loss of spousal consortium and other economic and noneconomic damages as a direct result of Dion's stroke caused by her use of Allerest containing PPA.

31. The physical, cognitive and emotional injuries and damages that Dion Nodurft has suffered from, does presently suffer from, and will continue to suffer from for the rest of her life that were caused by taking Allerest and the resultant stroke include pain, numbness and



LAW OFFICE OF RON PERREY
MARKET PLACE TOWER
[illegible]
SEATTLE, WA 98121
TELEPHONE (206)[illegible]
FACSIMILE (206)[illegible]

weakness in the whole left side of her body; severe headaches that can last all day; dizziness; sensitivity to light and sound; extreme skin sensitivity; difficulty seeing to her left side; neglecting and ignoring her left side; problems with her bowel and bladder functioning; fatigue and lack of endurance; poor reaction time; irritability and confusion caused by sensory deprivation; rapid mood changes often accompanied by crying; depression; problems eating and sleeping; memory problems; uncharacteristic weight gain; acting impulsively and with impaired judgment; spatial and perceptual deficits; difficulty doing simple, common tasks such as operating a zipper; anxiety and hesitation; disorganization and an inability to concentrate; and severe emotional distress.

32. As a result of her stroke, Dion Nodurft has been declared disabled by her doctors and by the Social Security Administration since February 7, 2000.

33. To support the Social Security Administration's Finding of Disability, Dion was thoroughly examined and independently evaluated by James E. Damon, M.D. Dr. Damon concluded that Dion has mental impairment as a result of her stroke; and that she has moderately severe adhesive capsulitis of the left shoulder ("frozen shoulder"), caused by being positioned on her left side during her brain surgeries.

34. To support the Social Security Administration's Finding of Disability, Dion also underwent a psychiatric evaluation by psychiatrist Harold B. Johnston, M.D. Dr. Johnston concluded that Dion has organic mental and affective disorders. Dion' s organic mental disorders consist of memory impairment; perceptual or thinking disorders; and a loss of measured intellectual abilities of at least 15 IQ points from her pre-stroke level, which equates to an overall impairment index within the severely impaired range on neuropsychological testing. Dion's affective disorders consist of psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; and difficulty concentrating or thinking. Dr. Johnston also concluded that Dion has persistent moderate limitations in performing activities of daily living; marked



LAW OFFICE OF RON PERRY
[illegible]
[illegible]
SEATTLE, WA [illegible]
TELEPHONE [illegible]
FACSIMILE [illegible]

limitations in maintaining social functioning; and marked limitations in maintaining concentration, persistence or pace. Dr. Johnston does not anticipate further improvement of Dion's condition.

35. To support the Social Security Administration's Finding of Disability, Dion underwent a psychological evaluation performed by psychologist Carl E. Epp, Ph.D., L.P. Dr. Epp concluded that Dion has severe impairments in auditory memory functioning; that her Global Assessment Functioning ("GAF") score is 50, which means her occupational and psychological functioning is 50% of what it was pre-stroke; that her concentration is impaired; and that she will continue to be limited to a fairly severe degree for an indeterminate time into the future.

36. Prior to her stroke, Dion Nodurft was a very active person who enjoyed exercising, playing sports and spending time outdoors. Having been raised in Idaho, she was an avid downhill skier for over 30 years. Dion was actively involved in bicycling, running and weightlifting. Dion also practiced karate for over 20 years, earning a black belt. Dion owned and operated a karate school at one point and served as the chief instructor. Dion also practiced judo and earned a brown belt for her skill. As a result of taking Allerest and the resultant stroke, Dion is not physically or mentally able to do any of these activities and she has lost the ability to enjoy life as she once did. Dion is also unable to drive a car due to her poor reaction time and unpredictable disorientation and confusion.

37. Dion lost her career as a corporate executive as a result of her stroke. Dion had worked for Stroud Systems, Inc. for almost ten years, and at the time of her stroke, was President of the company. Dion received a salary of $96,000 a year and full benefits, which included an expense account, health and life insurance, two weeks annual vacation, a company car and car insurance. Stroud Systems, Inc. was in the business of renting, selling and servicing non-destructive industrial testing equipment mostly to oil and oil-related companies. Stroud Systems,



LAW OFFICE OF RON PEREY
Millennium Place Tower
2025 First Avenue, Suite 350
Seattle, WA 98121
Telephone (206)443-7600
Facsimile (206)443-4785

Inc. had been in existence for over 40 years, had an international client base of over 3,000 companies, and had gross sales in excess of $3,000,000 for 1999. Dion's responsibilities as President of Stroud Systems, Inc. included planning and implementing the overall direction of the company; hiring, supervising and firing personnel; marketing and advertising; vendor/manufacturer relations; monitoring and maximizing sales; vendor contract negotiations; and collections. At the time of her stroke, Dion was 42 years old and planned on staying with Stroud Systems, Inc. until retirement or age 65. Dion and Robert Nodurft had an oral agreement in place to purchase Stroud Systems, Inc. for $500,000 and they were negotiating the final written contract when her stroke occurred. Stroud Systems, Inc. was professionally appraised in mid-1999 and its physical assets and goodwill were valued at $500,000, which was the purchase price Robert and Dion agreed to pay. The Nodurfts made 4 monthly payments of $6,000 – December 1999, January, February and March 2000 – towards the purchase price totaling $24,000. The $24,000 the Nodurfts paid was forfeited when they could not complete the purchase of Stroud Systems, Inc. because of Dion's stroke and disability. Robert was hired by Stroud Systems, Inc. as Vice President in January of 2000, about a month before Dion's stroke. Dion and Robert intended to work together to bring the company to a new level of efficiency, productivity, and profitability, but Dion's stroke put an end to those plans. Dion and Robert should be awarded the $24,000 deposit that they lost.

38. Because of her stroke and resultant disabilities, Dion was and is unable to properly care for her 12-year-old daughter Josephine; she now lives across the country in New York with her father. They talk about once a week, but Dion's disability has caused a deterioration of their mother – daughter relationship. The emotional damage to Dion and the damage to the parent – child relationship between Dion and her only child has been very substantial.

39. Dion's stroke and resultant disabilities have created marital problems for Dion



LAW OFFICE OF RON PEREY
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]

and Robert. Because of Dion's pain and overall sensitivity, physical intimacy between them has been greatly diminished. Dion and Robert had a normal physical relationship before her stroke and now sexual intimacy is difficult and greatly diminished. This has been emotionally devastating for Dion and Robert. Some of the activities that Dion and Robert can no longer do together because of her stroke and resultant disabilities include martial arts training; being active as a corporate executives; bike riding; hiking; dancing; remodeling houses; playing games and sports; weight-lifting; skiing and all the normal things healthy married couples without physical or mental limitations engage in.

40. Due to her stoke and disabilities, Dion Nodurft cannot perform household services. The household services that Dion can no longer perform because of her stroke and resultant disabilities include doing her share of the cleaning, cooking, driving, shopping, running errands and bill paying. Robert Nodurft has suffered and will continue to suffer a loss of household services from Dion valued at $373,230.

41. As a result of her stroke and resultant disabilities, Dion Nodurft has suffered and will continue to suffer non-economic damages for physical pain and mental anguish and disfigurement in the total amount of $6,000,000, and for physical impairment/loss of enjoyment of life in the amount of $4,350,000. The total amount of non-economic damages to Dion Nodurft is $10,350,000.

42. As a result of taking Allerest and the resultant stroke, Dion Nodurft is disabled, unable to work and has lost earnings to date in the amount of $225,788, and lost earning capacity valued at $2,292,655. These economic damages to Dion Nodurft total $2,518,443. Additionally, the Nodurfts lost their down payment on the purchase of Stroud Systems Inc. in the amount of $24,000.

43. As a result of taking Allerest and the resultant stroke, Dion Nodurft has incurred medical care expenses in the amount of $157,843.31, and will incur future medical care expenses



LAW OFFICE OF RON PEREY
Market Place Tower
2025 First Avenue, Suite 330
Seattle, WA 98121
Telephone (206)443-7600
Facsimile (206)443-4700

for monitoring and treatment of $5,000 a year for the next 20 years, for a total of $100,000. These economic damages to Dion Nodurft total $257,843.31.

44. The total amount of economic damages to Dion Nodurft as a result of her use of Allerest and the resultant stroke and disabilities is $2,776,386.31.

45. Robert Nodurft has also suffered severe mental anguish because of Dion's use of Allerest and the resultant stroke and disabilities. Following Dion's first surgey, Dr. Trask, the neurosurgeon that performed her operations, told Robert that he didn't know if Dion would come out of the coma. Doctors told Robert to be prepared for Dion to be in a vegetative state. Robert was told that if Dion came out of the coma she might not recognize him; she might not be able to walk; she might not be able to control her bodily functions; she might not ever be able to work again or care for her daughter. Following Dion's second surgery, and for the whole week and a half that Dion remained in a coma in ICU, Robert watched the pressure monitor that showed the pressure level in her brain. He was told that if the pressure rose above 25, they would have to operate again and Dion could die. Watching the monitor rise from 18 to 24 and drop back to 18 again, over and over again for weeks on end, not knowing if Dion was going to live or die or be in a vegetative state for the rest of her life, was the most emotionally distressful experience of Robert's life and one that will be with him forever. Robert Nodurft is entitled to non-economic damages for mental anguish and loss of spousal consortium in the total amount of $500,000. In addition to the loss of Dion's household services valued at $373,230, Robert Nodurft suffered economic damages of $10,000 in lost earnings because he had to stay home from work and care for Dion for six weeks following her stroke. The total economic damages to Robert Nodurft is $383,230.

46. As a result of this lawsuit, the Nodurfts have incurred reasonable lawyers' fees in the amount of $32,250, and actual costs in the amount of $11,690.15, for which they are entitled to an award pursuant to the Texas Deceptive Trade Practices - Consumer Protection Act, Tex.



LAW OFFICE OF RON PERRY
Market Place Tower
2025 First Avenue, Suite 330
Seattle, WA 98121
Telephone (206) 443-[illegible]
Facsimile (206) 443-[illegible]

Bus. & Com. Code § 17.50(d).

47. Because defendant Heritage is liable to the Nodurfts for malice and fraud, pursuant to Tex. Civ. Prac. & Rem. Code § 41.003, the Court will award exemplary damages in the amount of $ 0.

48. Because defendant Heritage is liable to the Nodurfts for violating the Texas Deceptive Trade Practices - Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, et seq., the Court will award treble damages in the amount of $6,319,232.

49. Pursuant to Tex. Fin. Code § 304.102, the Nodurfts are entitled to $130,500 in prejudgment interest on all nonexemplary and nontreble damages awarded.

50. The Nodurfts are entitled to postjudgment interest on all damages awarded at the rate of 12% per annum from the date the judgment in this case is signed until paid in full.

Having made the foregoing Findings of Fact, the Court now makes the following Conclusions of Law:

## II. CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the subject matter of this action, and venue is proper in King County, Washington.

2. Texas substantive law governs this action because the Allerest allergy medicine that caused Dion Nodurft's hemorrhagic stroke was purchased and consumed by her in Texas; and her injuries initially occurred in Texas where she and her husband Robert were residents.

3. Defendant Heritage was properly served with the summons and complaint through its registered agent for service of process, CT Corporation System, One Commercial Plaza, Hartford, Connecticut 06103, on November 30, 2001.

4. Defendant Heritage has not appeared at any time since service upon it was obtained, and has failed to file or serve an answer within sixty (60) days as required by CR 12(a)(3).



LAW OFFICE OF RON PERRY
[illegible]

5. On January 31, 2002, Judge Catherine Shaffer signed and entered an Order of Default against defendant Heritage because no appearance was made and no answer was filed or served on its behalf within the time required by law.

6. Defendant Heritage has not appeared or communicated with plaintiffs' counsel since the entry of the Order of Default on January 31, 2002, nor has it sought an injunction to suspend the proceedings in this case as provided for in RCW 4.72.070, nor has it sought a stay of proceedings as provided for in CR 62(b).

7. Defendant Heritage is liable to the Nodurfts under the Texas Products Liability Act, Tex. Civ. Prac. & Rem. Code ("CPRC") Ch. 82.

8. Defendant Heritage is strictly liable to the Nodurfts under the Restatement (Second) of Torts § 402A (1965).

9. Defendant Heritage is liable to the Nodurfts for breaching the implied warranty of merchantability, Tex. Bus. & Com. Code § 2.314.

10. Defendant Heritage is liable to the Nodurfts for breaching the implied warranty of fitness for a particular purpose, Tex. Bus. & Com. Code § 2.315.

11. Defendant Heritage is liable to the Nodurfts for breaching its own express warranties as defined under the Tex. Bus. & Com. Code § 2.313.

12. Defendant Heritage is liable to the Nodurfts for negligence and for negligence per se for violating federal regulations 21 C.F.R. 330.10(a)(4)(v) and 21 C.F.R. 369.10.

13. Defendant Heritage is liable to the Nodurfts for negligent misrepresentation.

14. Defendant Heritage is liable to the Nodurfts for malice and, therefore, pursuant to Tex. Civ. Prac. & Rem. Code § 41.003, the Nodurfts are entitled to exemplary damages.

15. Defendant Heritage is liable to the Nodurfts for fraud and, therefore, pursuant to Tex. Civ. Prac. & Rem. Code § 41.003, the Nodurfts are entitled to exemplary damages.

16. Defendant Heritage is liable to the Nodurfts for violating the Texas Deceptive



LAW OFFICE OF RON PEREY
Market Place Tower
2025 First Avenue, Suite 730
Seattle, WA 98121
Telephone (206) 443-7600
Facsimile (206) 443-4785

Trade Practices - Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 et seq. and, therefore, the Nodurfts are entitled to treble damages, court costs and attorneys' fees and costs.

17. Defendant Heritage is liable to the Nodurfts for the injuries and economic and noneconomic damages they sustained as a direct and proximate result of defendant Heritage's failure to provide a reasonably safe product, its failure to comply with the warranties mandated by the Tex. Bus. & Com. Code, its negligence, malice, fraud and violation of the Texas Deceptive Trade Practices - Consumer Protection Act. The acts and omissions of defendant Heritage were producing/proximate causes of Dion Nodurft's stroke and the consequential injuries and damages sustained by Dion and Robert Nodurft.

18. A judgment should be entered against defendant Heritage Consumer Products LLC and in favor of Dion Nodurft awarding economic damages for lost earnings of $225,788, lost earning capacity valued at $2,292,655, past medical care expenses of 157,843.31, and future medical care expenses of $100,000, for a total economic damages award of $2,776,386.31; and non-economic damages for physical pain and mental anguish and disfigurement in the total amount of $6,000,000, and for physical impairment/loss of enjoyment of life in the amount of $4,350,000, for a total non-economic damages award of $10,350,000.

19. A judgment should be entered against defendant Heritage Consumer Products LLC and in favor of Robert Nodurft awarding economic damages for lost wages in the amount of $10,000 and for the loss of household services from Dion valued at $373,230; and awarding non-economic damages for loss of spousal consortium and mental anguish in the amount of $500,000.

20. A judgment should be entered against defendant Heritage Consumer Products LLC and in favor of Dion and Robert Nodurft awarding treble damages pursuant to the Texas Deceptive Trade Practices - Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 *et seq.* in the amount of $6,319,232, or exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code §



LAW OFFICE OF RON PEREY
Market Place Tower
2025 First Avenue, Suite 350
Seattle, WA 98121
Telephone (206) 443-7600
Facsimile (206) 443-4785

41.003 in the amount of $ 0 .

21. Defendant Heritage should have taxed against it plaintiffs' lawyers' fees of $32,250, actual costs of $11,690.15, pursuant to the Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code § 17.50(d).

22. Pursuant to Tex. Fin. Code § 304.102, the Nodurfts are entitled to $130,500 in prejudgment interest on all nonexemplary and nontreble damages awarded.

23. The Nodurfts are entitled to postjudgment interest on all damages awarded at the rate of 12% per annum from the date the judgment in this case is signed and until paid in full.

**DONE IN OPEN COURT** this 19 day of June, 2002.

Judge Catherine Shaffer

PRESENTED BY:

LAW OFFICE OF RON PEREY

Ron Perey, WSBA #2275
John C. Siegel, WSBA #29866
Lawyers for Plaintiffs
Dion and Robert Nodurft



LAW OFFICE OF RON PEREY
Market Place Tower
2025 First Avenue, Suite 250
Seattle, WA 98121
Telephone (206)443-0800
Facsimile (206)443-0785

RECEIVED JUN 18 2002 LAW OFFICE OF RON PEREY

The Honorable Catherine Shaffer

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

DION NODURFT and ROBERT NODURFT, wife and husband,

Plaintiffs,

v.

HERITAGE CONSUMER PRODUCTS LLC, a Delaware limited liability company,

Defendant

NO. 01-2-31788-1 SEA

JUDGMENT IN FAVOR OF PLAINTIFFS DION AND ROBERT NODURFT AND AGAINST DEFENDANT HERITAGE CONSUMER PRODUCTS LLC

(Clerk's Action Required)

JUDGMENT SUMMARY

| | |
|---|---|
| Judgment Creditors: | Dion and Robert Nodurft, wife and husband |
| Judgment Debtor: | Heritage Consumer Products LLC |
| Principal Amount: | $28,503,288, inclusive of: |
| Interest to Date: | $130,500 |
| Lawyers' Fees: | $32,250 |
| Lawyers' Costs: | $11,690.15 |
| Prejudgment Interest Rate: | 10% |
| Postjudgment Interest Rate: | 12% per annum from date judgment is signed until paid in full |

This matter having come before the Court pursuant to CR 55 and KCLR 55, and the Court having previously entered its Finding of Facts and Conclusions of Law, now, therefore, it is:

ORDERED, ADJUDGED AND DECREED that the plaintiffs Dion and Robert Nodurft,



ORIGINAL

LAW OFFICE OF RON PEREY
Market Place Tower
2025 First Avenue, Suite 570
Seattle, WA 98121
Telephone (206) 443-7600
Facsimile (206) 443-0783

wife and husband, are awarded judgment against defendant Heritage Consumer Products LLC in the sum of $3,159,616.31 for economic damages, and $10,850,000 for non-economic damages, and in the sum of $6,319,232 for treble damages or $ 0 in exemplary damages, plus lawyers' fees of $32,250, and lawyers' costs of $11,690.15, and prejudgment interest on nonexemplary damages and nontreble damages in the amount of $130,500, for a total judgment in the amount of $20,503,288, which shall accrue interest at the rate of ten percent (12%) per annum from the date this judgment is signed until paid in full.

DATED this 17 day of June, 2002.

Judge Catherine Shaffer

PRESENTED BY:

LAW OFFICE OF RON PEREY

Ron Perey, WSBA #2275
John C. Siegel, WSBA #29866
Lawyers for Plaintiffs
Dion and Robert Noduft



LAW OFFICE OF RON PEREY
Market Place Tower
2025 First Avenue, Suite 950
Seattle, WA 98121
Telephone (206) 443-7600
Facsimile (206) 443-4785